*In The*

# United States Court of Appeals

*for the*

# Fifth Circuit

———————————•———————————

JAY AUBREY ISAAC HOLLIS, Individually and as
Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust,

*Plaintiff-Appellant,*

v.

LORETTA E. LYNCH, Attorney General of the United States;
THOMAS E. BRANDON, Acting Director of the Bureau of Alcohol,
Tobacco, Firearms, and Explosives,

*Defendants-Appellees.*

———————————————————————

*On Appeal from the United States District Court for the Northern District
of Texas, Dallas Division, USDC No. 3:14-CV-3872,
The Honorable Judge Barbara M.G. Lynn*

## RECORD EXCERPTS

ALAN ALEXANDER BECK, ESQ.
LAW OFFICE OF ALAN BECK
4780 Governor Drive
San Diego, California 92122
(619) 905-9105

STEPHEN DEAN STAMBOULIEH, ESQ.
STAMBOULIEH LAW, PLLC
P.O. Box 4008
Madison, Mississippi 39130
(601) 852-3440

*Attorneys for Plaintiff-Appellant
Jay Aubrey Isaac Hollis, Individually and as
Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust*

CP COUNSEL PRESS • (888) 700-3226

# TABLE OF CONTENTS

| Excerpt Tab Number | Record Citation | Document | Record Page |
|---|---|---|---|
| TAB 1 | ROA.1 | Docket Entries – 3:14−cv−03872−M | RE-1 |
| TAB 2 | ROA. 788 | Memorandum Opinion and Order, filed August 7, 2015 | RE-7 |
| TAB 3 | ROA. 828 | Judgment, filed August 7, 2015 | RE-47 |
| TAB 4 | ROA. 829 | Notice of Appeal, filed August 18, 2015 | RE-48 |

TAB 1

APPEAL,CLOSED

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:14–cv–03872–M

Hollis v. Lynch et al

Assigned to: Judge Barbara M.G. Lynn

Case in other court:  15–10803

Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 10/30/2014

Date Terminated: 08/07/2015

Jury Demand: None

Nature of Suit: 440 Civil Rights: Other Civil Rights

Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Jay Aubrey Isaac Hollis**
*Individually and as Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust*

represented by **Stephen Dean Stamboulieh**
Stamboulieh Law PLLC
PO Box 4008
Madison, MS 39130
601/852–3440
Email: stephen@sdslaw.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Bar Status: Admitted/In Good Standing

**Alan Alexander Beck**
Law Office of Alan Beck
4025 Camino Del Rio South
3rd Floor Suite 345
San Diego, CA 92108
619/971–0414
Email: alan.alexander.beck@gmail.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
Bar Status: Not Admitted

**Elisha Michael Hollis**
Law Offices of Elisha M Hollis PLLC
PO Box 1535
Greenville, TX 75403
903/450–2473
Fax: 903/200–1290
Email: elishahollis@gmail.com
*ATTORNEY TO BE NOTICED*
Bar Status: Admitted/In Good Standing

V.

**Defendant**

**Eric H Holder, Jr**
*Attorney General of the United States*
*TERMINATED: 04/27/2015*

represented by **Eric J Soskin–DOJ**
US Department of Justice
Civil Division
20 Massachusetts Ave NW
Washington, DC 20001
202/353–0533
Fax: 202/216–8460
Email: eric.soskin@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Bar Status: Not Admitted

**Daniel M Riess**
US Department of Justice – Civil Division
20 Massachusetts Ave NW

RE-1

Washington, DC 20530
202/353–3098
Fax: 202/616–8460
Email: Daniel.Riess@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

| | | |
|---|---|---|
| **B Todd Jones** | represented by | **Eric J Soskin–DOJ** |
| *Director of the Bureau of Alcohol* | | (See above for address) |
| *Tobacco Firearms and Explosives* | | *LEAD ATTORNEY* |
| *TERMINATED: 08/06/2015* | | *ATTORNEY TO BE NOTICED* |
| | | *Bar Status: Not Admitted* |

**Daniel M Riess**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

| | | |
|---|---|---|
| **Loretta E Lynch** | represented by | **Daniel M Riess** |
| *Attorney General of the United States* | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Bar Status: Not Admitted* |

**Eric J Soskin–DOJ**
US Department of Justice
Civil Division
20 Massachusetts Ave NW
Washington, DC 20001
202–353–0533
Fax: 202–216–8460
Email: eric.soskin@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

| | | |
|---|---|---|
| **Thomas E Brandon** | represented by | **Eric J Soskin–DOJ** |
| *Acting Director of the Bureau of Alcohol* | | (See above for address) |
| *Tobacco Firearms and Explosives* | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Bar Status: Not Admitted* |

**Daniel M Riess**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/30/2014 | 1 | COMPLAINT against All Defendants filed by Jay Aubrey Isaac Hollis. (Filing fee $400; Receipt number 0539–6395082) Clerk to issue summons(es). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information – Bar Membership. If admission requirements are not satisfied within 21 days, the clerk |

RE-2

| | | |
|---|---|---|
| | | will notify the presiding judge. (Attachments: #_1 Exhibit(s) Ex. A. Dakota Silencer Letter, #_2 Exhibit(s) Ex. B. Cover Letter, #_3 Exhibit(s) Ex. C. Approved Form 1, #_4 Exhibit(s) Ex. D. Disapproved Form 1, #_5 Exhibit(s) Ex. E. Letter from NFA Chief) (Stamboulieh, Stephen) (Entered: 10/30/2014) |
| 10/30/2014 | 2 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Jay Aubrey Isaac Hollis. (Stamboulieh, Stephen) (Entered: 10/30/2014) |
| 10/30/2014 | 3 | New Case Notes: A filing fee has been paid. File to Judge Lynn. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Stickney). Clerk to provide copy to plaintiff if not received electronically. (cea) (Entered: 10/31/2014) |
| 10/31/2014 | 4 | Summons issued as to Eric H Holder, Jr, B Todd Jones, U.S. Attorney, and U.S. Attorney General. (cea) (Entered: 10/31/2014) |
| 10/31/2014 | 5 | ADDITIONAL ATTACHMENTS to_1 Complaint by Plaintiff Jay Aubrey Isaac Hollis. (Stamboulieh, Stephen) (Entered: 10/31/2014) |
| 11/09/2014 | 6 | SUMMONS Returned Executed as to Eric H Holder, Jr; served on 11/5/2014. (Attachments: #_1 Certified Mail Receipts) (Stamboulieh, Stephen) (Entered: 11/09/2014) |
| 11/11/2014 | 7 | NOTICE of Attorney Appearance by Elisha Michael Hollis on behalf of Jay Aubrey Isaac Hollis. (Filer confirms contact info in ECF is current.) (Hollis, Elisha) (Entered: 11/11/2014) |
| 11/13/2014 | 8 | SUMMONS Returned Executed as to B Todd Jones ; served on 11/5/2014. (Attachments: #_1 Certified Mail Receipts) (Stamboulieh, Stephen) (Entered: 11/13/2014) |
| 11/24/2014 | 9 | NOTICE of Attorney Appearance by Eric J Soskin−DOJ on behalf of Eric H Holder, Jr, B Todd Jones. (Filer confirms contact info in ECF is current.) (Soskin−DOJ, Eric) (Entered: 11/24/2014) |
| 12/17/2014 | 10 | Unopposed Motion for Extension of Time to File Answer *or Otherwise Respond* filed by Eric H Holder, Jr, B Todd Jones (Attachments: #_1 Proposed Order) (Soskin−DOJ, Eric) (Entered: 12/17/2014) |
| 12/18/2014 | | ELECTRONIC ORDER granting_10 Motion for Extension of Time to File Answer. Defendants shall answer or otherwise respond to Plaintiff's Complaint no later than January 16, 2015. (Ordered by Judge Barbara M.G. Lynn on 12/18/2014)(chmb) (Entered: 12/18/2014) |
| 01/16/2015 | 11 | NOTICE of Attorney Appearance by Daniel M Riess on behalf of Eric H Holder, Jr, B Todd Jones. (Filer confirms contact info in ECF is current.) (Riess, Daniel) (Entered: 01/16/2015) |
| 01/16/2015 | 12 | Unopposed MOTION for Leave to File Brief in Excess of Page Limit filed by Eric H Holder, Jr, B Todd Jones with Brief/Memorandum in Support. (Attachments: #_1 Proposed Order) (Soskin−DOJ, Eric) (Entered: 01/16/2015) |
| 01/16/2015 | 13 | Motion to Dismiss for Failure to State a Claim, MOTION to Dismiss for Lack of Jurisdiction , MOTION for Summary Judgment filed by Eric H Holder, Jr, B Todd Jones (Attachments: #_1 Proposed Order) (Soskin−DOJ, Eric) (Entered: 01/16/2015) |
| 01/16/2015 | 14 | Brief/Memorandum in Support filed by Eric H Holder, Jr, B Todd Jones re_13 Motion to Dismiss for Failure to State a Claim, MOTION to Dismiss for Lack of Jurisdiction, MOTION for Summary Judgment (Soskin−DOJ, Eric) (Entered: 01/16/2015) |
| 01/16/2015 | 15 | Appendix in Support filed by Eric H Holder, Jr, B Todd Jones re_13 Motion to Dismiss for Failure to State a Claim, MOTION to Dismiss for Lack of Jurisdiction, MOTION for Summary Judgment (Attachments: #_1 Additional Page(s)) (Soskin−DOJ, Eric) (Entered: 01/16/2015) |
| 01/16/2015 | 16 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Eric H Holder, Jr, B Todd Jones. (Soskin−DOJ, Eric) (Entered: 01/16/2015) |

RE-3

| 01/20/2015 | 17 | CERTIFICATE OF SERVICE by Eric H Holder, Jr, B Todd Jones re 15 Appendix in Support, (Soskin−DOJ, Eric) (Entered: 01/20/2015) |
|---|---|---|
| 01/20/2015 | 18 | ORDER granting 12 Motion for Leave to File. (The requesting party must file the document with the clerk.) (Ordered by Judge Barbara M.G. Lynn on 1/20/2015) (aaa) (Entered: 01/20/2015) |
| 02/03/2015 | 19 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539−6576184) filed by Jay Aubrey Isaac Hollis (Attachments: # 1 Exhibit(s) Letter of Good Standing, # 2 Proposed Order) (Beck, Alan) (Entered: 02/03/2015) |
| 02/04/2015 | 20 | ELECTRONIC ORDER granting 19 Application for Admission Pro Hac Vice of Alan Beck. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Judge Barbara M.G. Lynn on 2/4/2015) (chmb) (Entered: 02/04/2015) |
| 02/04/2015 | 21 | Unopposed MOTION for Leave to File Brief in Excess of Page Limit filed by Jay Aubrey Isaac Hollis with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Stamboulieh, Stephen) (Entered: 02/04/2015) |
| 02/04/2015 | 22 | RESPONSE filed by Jay Aubrey Isaac Hollis re: 13 Motion to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment (Attachments: # 1 Proposed Order) (Stamboulieh, Stephen) (Entered: 02/04/2015) |
| 02/04/2015 | 23 | Brief/Memorandum in Support filed by Jay Aubrey Isaac Hollis re 22 Response/Objection, *to Defendants' Motion to Dismiss or Summary Judgment* (Stamboulieh, Stephen) (Entered: 02/04/2015) |
| 02/04/2015 | 24 | Appendix in Support filed by Jay Aubrey Isaac Hollis re 23 Brief/Memorandum in Support of Motion, 22 Response/Objection, *to Defendants' Motion to Dismiss or Summary Judgment* (Attachments: # 1 Additional Page(s), # 2 Additional Page(s)) (Stamboulieh, Stephen) (Entered: 02/04/2015) |
| 02/05/2015 | 25 | ORDER granting 21 Unopposed MOTION for Leave to File Brief in Excess of Page Limit. Plaintiff may file a brief that must not exceed 40 pages, excluding the table of contents and table of authorities. (Ordered by Judge Barbara M.G. Lynn on 2/5/2015) (jrr) (Entered: 02/05/2015) |
| 02/23/2015 | 26 | Unopposed MOTION for Leave to File Brief in Excess of Page Limit *(Reply in Support of Motion to Dismiss)* filed by Eric H Holder, Jr, B Todd Jones with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Soskin−DOJ, Eric) (Entered: 02/23/2015) |
| 02/23/2015 | 27 | REPLY filed by Eric H Holder, Jr, B Todd Jones re: 13 Motion to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment (Soskin−DOJ, Eric) (Entered: 02/23/2015) |
| 02/25/2015 | 28 | ORDER: Before the Court is the Unopposed Motion for Leave to File Brief in Excess of Page Limitations 26 , filed by Defendants. The Motion is GRANTED. Defendants may file a reply brief that must not exceed twenty−three (23) pages, excluding the table of contents and table of authorities. (The requesting party must file the document with the clerk.) (Ordered by Judge Barbara M.G. Lynn on 2/25/2015) (tlm) (Entered: 02/26/2015) |
| 02/27/2015 | 29 | MOTION for Leave to File Plaintiff's Sur−reply to Defendants' 27 Reply filed by Jay Aubrey Isaac Hollis with Brief/Memorandum in Support. (Attachments: # 1 Exhibit(s) A, # 2 Proposed Order) (Stamboulieh, Stephen) (Entered: 02/27/2015) |
| 03/02/2015 | 30 | ELECTRONIC ORDER GRANTING 29 Motion for Leave to File Sur−Reply. Defendants may file a sur−sur reply on or before March 11, 2015. No other response will be permitted. (Ordered by Judge Barbara M.G. Lynn on 3/2/2015)(chmb) (Entered: 03/02/2015) |
| 03/02/2015 | | Hearing/Deadline Modification: Deadlines/hearings set per 30 Order on Motion for Leave to File. Surreplies due by 3/11/2015. (skt) (Entered: 03/03/2015) |

RE-4

| 03/03/2015 | 31 | Sur−reply filed by Jay Aubrey Isaac Hollis re: 13 Motion to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment (Stamboulieh, Stephen) (Entered: 03/03/2015) |
| 03/11/2015 | 32 | Sur−Sur−Reply filed by Eric H Holder, Jr, B Todd Jones re: 13 Motion to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment (Riess, Daniel) Modified text per attorney on 3/11/2015 (jrr). (Entered: 03/11/2015) |
| 03/12/2015 | 33 | MOTION to Compel *Defendants to Participate in Rule 26(f) Conference* filed by Jay Aubrey Isaac Hollis with Brief/Memorandum in Support. (Attachments: # 1 Exhibit(s) Emails, # 2 Proposed Order) (Stamboulieh, Stephen) (Entered: 03/12/2015) |
| 03/16/2015 | 34 | ELECTRONIC ORDER DENYING 33 Motion to Compel Rule 26(f) Conference. The Court hereby STAYS entry of a Rule 16(b) Scheduling Order and Rule 26(f) Conference until the Court rules on the pending Motion to Dismiss and Motion for Summary Judgment [Docket Entry #13]. (Ordered by Judge Barbara M.G. Lynn on 3/16/2015) (chmb) (Entered: 03/16/2015) |
| 03/24/2015 | 35 | ORDER SETTING HEARING: Motion Hearing set for 4/23/2015 01:30 PM in US Courthouse, Courtroom 1570, 1100 Commerce St., Dallas, TX 75242−1310 before Judge Barbara M.G. Lynn. re: 13 Motion to Dismiss, or in the Alternative, for Summary Judgment. (Ordered by Judge Barbara M.G. Lynn on 3/24/2015) (chmb) (Entered: 03/24/2015) |
| 04/23/2015 | 36 | Minute Entry for proceedings held before Judge Barbara M.G. Lynn: Motion Hearing held on 4/23/2015 re 13 Dismiss for Failure to State a Claim, Motion to Dismiss/Lack of Jurisdiction, Motion for Summary Judgment filed by Eric H Holder, Jr, B Todd Jones. Attorney Appearances: Plaintiff − Stephen Stamboulieh, Elisha Hollis, Alan Beck; Defense − Eric J. Soskin, Daniel M. Riess. (Court Reporter: Keith Johnson) (No exhibits) Time in Court − 1:45. Order to Enter (ykp) (Entered: 04/24/2015) |
| 05/07/2015 | 37 | NOTICE of *Correspondence to the Court* filed by Jay Aubrey Isaac Hollis (Attachments: # 1 Exhibit(s) "A" Stemple Letter Correspondence) (Stamboulieh, Stephen) (Entered: 05/07/2015) |
| 06/16/2015 | 38 | Notice of Filing of Official Electronic Transcript of Motions Proceedings held on April 23, 2015 before Judge Lynn. Court Reporter/Transcriber D. Keith Johnson, Telephone number 214−753−2325. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Redaction Request − Transcript must be filed within 21 days. If no such Request is filed, the transcript will be made available via PACER without redaction after 90 calendar days. If redaction request filed, this transcript will not be accessible via PACER; see redacted transcript. The clerk will mail a copy of this notice to parties not electronically noticed. (80 pages) Redaction Request due 7/7/2015. Redacted Transcript Deadline set for 7/17/2015. Release of Transcript Restriction set for 9/14/2015. (dkj) (Entered: 06/16/2015) |
| 06/30/2015 | 39 | Unopposed MOTION for Leave to File Notice of Supplemental Authority filed by Jay Aubrey Isaac Hollis (Attachments: # 1 Exhibit(s) Notice of Supplemental Authority, # 2 Proposed Order) (Stamboulieh, Stephen) (Entered: 06/30/2015) |
| 06/30/2015 | 40 | Brief/Memorandum in Support filed by Jay Aubrey Isaac Hollis re 39 Unopposed MOTION for Leave to File Notice of Supplemental Authority (Stamboulieh, Stephen) (Entered: 06/30/2015) |
| 07/02/2015 | 41 | ELECTRONIC ORDER GRANTING 39 Plaintiff's Motion for Leave to File Supplemental Authority. No response will be permitted. (Ordered by Judge Barbara M.G. Lynn on 7/2/2015)(chmb) (Entered: 07/02/2015) |
| 07/05/2015 | 42 | Supplemental Document by Jay Aubrey Isaac Hollis ,*Notice of Supplemental Authority*. (Attachments: # 1 Exhibit(s) Johnson v. United States) (Stamboulieh, Stephen) (Entered: 07/05/2015) |

RE-5

| 08/04/2015 | 43 | Joint MOTION for Leave to File Joint Notice of Supplemental Authority filed by Jay Aubrey Isaac Hollis, B Todd Jones, Loretta E Lynch (Attachments: # 1 Exhibit(s) Proposed Notice, # 2 Proposed Order) (Stamboulieh, Stephen) (Entered: 08/04/2015) |
|---|---|---|
| 08/04/2015 | 44 | Brief/Memorandum in Support filed by Jay Aubrey Isaac Hollis, B Todd Jones, Loretta E Lynch re 43 Joint MOTION for Leave to File Joint Notice of Supplemental Authority (Stamboulieh, Stephen) (Entered: 08/04/2015) |
| 08/07/2015 | 45 | MEMORANDUM OPINION AND ORDER: For the reasons stated, the Defendants' 12(b)(1) 13 Motion to Dismiss Plaintiff's Second Amendment ("Count I") and Commerce Clause ("Count II") claims for lack of standing is GRANTED, and those claims are DISMISSED. Defendants' 13 12(b)(6) Motion to Dismiss Plaintiff's due process ("Count III"), equal protection ("Count IV"), and Plaintiff's alternative request for declaratory relief that § 922(o) does not apply to Plaintiff or the Hollis Trust (Dkt. No. 1 3) is GRANTED, and those claims are DISMISSED with prejudice. Plaintiff's Motion for Discovery under Fed. R. Civ. P. 56(d) is DENIED as moot. (Ordered by Judge Barbara M.G. Lynn on 8/7/2015) (twd) (Entered: 08/07/2015) |
| 08/07/2015 | 46 | ELECTRONIC ORDER DENYING 43 Joint Motion for Leave to File Supplemental Authority. The Joint Motion is DENIED as moot. (Ordered by Judge Barbara M.G. Lynn on 8/7/2015)(chmb) (Entered: 08/07/2015) |
| 08/07/2015 | 47 | JUDGMENT: It is ORDERED that Plaintiff shall take nothing on his claims against Defendants. All court costs are taxed against the Plaintiff. (Ordered by Judge Barbara M.G. Lynn on 8/7/2015) (twd) (Entered: 08/07/2015) |
| 08/18/2015 | 48 | NOTICE OF APPEAL to the Fifth Circuit as to 45 Memorandum Opinion and Order,,, 47 Judgment by Jay Aubrey Isaac Hollis. Filing fee $505, receipt number 0539−7002943. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. (Stamboulieh, Stephen) (Entered: 08/18/2015) |
| 08/18/2015 | 49 | Transcript Order Form: re 48 Notice of Appeal, transcript not requested (Stamboulieh, Stephen) (Entered: 08/18/2015) |
| 08/28/2015 |  | USCA Case Number 15−10803 for 48 Notice of Appeal, filed by Jay Aubrey Isaac Hollis. (svc) (Entered: 08/28/2015) |
| 09/17/2015 |  | Record on Appeal for USCA5 15−10803 (related to 48 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA), 1 Volume(s) electronic transcript. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing, in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so, since the USCA5 briefing deadline has now been set. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (svc) (Entered: 09/17/2015) |

TAB 2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAY AUBREY ISAAC HOLLIS, individually and as Trustee of the JAY AUBREY ISAAC HOLLIS REVOCABLE LIVING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>LORETTA E. LYNCH, Attorney General of the United States, and THOMAS E. BRANDON, Director, Bureau of Alcohol, Tobacco, Firearms & Explosives,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 3:14-cv-03872-M |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment [Dkt. No. 13]. For the reasons stated herein, Defendants' 12(b)(1) Motion to Dismiss Plaintiff's Second Amendment and Commerce Clause claims for lack of standing is **GRANTED**, and Defendants' 12(b)(6) Motion to Dismiss Plaintiff's due process, equal protection, and Plaintiff's alternative request for declaratory relief that § 922(o) does not apply to Plaintiff or the Hollis Trust is **GRANTED**.

## BACKGROUND

Plaintiff Jay Aubrey Hollis brings this action in his individual capacity and as Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust ("the Hollis Trust") to invalidate the federal ban on the transfer and possession of machine guns, imposed by the Gun Control Act ("GCA"), 18 U.S.C. § 922(o), and the National Firearms Act ("NFA"), 26 U.S.C. § 5801 *et seq.*, and their implementing regulations, 27 C.F.R. § 470.105(a).

1

RE-7

In a March 17, 2014 letter, the Bureau of Alcohol Tobacco and Firearms ("ATF")

advised a federal firearms licensee, Brandon Maddox, that, while the GCA contains an exception

that permits a licensee to forego a National Instant Criminal Background Check on a previously-

approved NFA transfer, that exception does not apply when the transferee is an unincorporated

trust.  Dkt. No. 1 ¶ 25; Dkt. No. 1-1 (Pl.'s Ex. A) ("Dakota Silencer Letter").  The relevant part

of the letter stated:

> Federal firearms law at 18 U.S.C. § 922(t)(1) requires federal firearms licensees (FFLs)
> to run a NICS check "before completion of the transfer," and verify the identity of the
> transferee.  There is an exception under section 922(t)(3)(B) and 27 CFR 478.102(d)(2),
> if the Attorney General "has approved the transfer under section 5812 of the Internal
> Revenue Code of 1986."  Subject to limited exceptions, the Gun Control Act (GCA) at
> section 922(b)(3) also makes it unlawful for an FFL to sell or deliver a firearm "to any
> person who the licensee knows or has reasonable cause to believe does not reside in (or if
> the person is a corporation or other business entity, does not maintain a place of business
> in) the State in which the licensee's place of business is located."  The term "person" is
> defined by the GCA at 18 U.S.C. § 921(a)(1), to include "any individual, corporation,
> company, association, firm, partnership, society, or joint stock company."
>
> ATF has interpreted the GCA exception in sections 922(t)(3)(B) and 478.102(d)(2) to
> mean that firearms transfers are exempt from a NICS check when they have been
> approved under the NFA *to the person receiving the firearm*.  Unlike individuals,
> corporations, partnerships, and associations; unincorporated trusts do not fall within the
> definition of "person" in the GCA.
>
> Because unincorporated trusts are not "persons" under the GCA, a Federal firearms
> licensee (FFL) cannot transfer firearms to [an unincorporated trust] without complying
> with the GCA.  Thus, when an FFL transfers an NFA firearm to a trustee or other person
> acting on behalf of a trust, the transfer is made *to this person as an individual (i.e., not as
> a trust)*.  As the trustee or other person acting on behalf of the trust is not the approved
> transferee under the NFA, [26] U.S.C. § 5812, the trustee or other person acting on behalf
> of a trust must undergo a NICS check.  The individual must also be a resident of the same
> State as the FFL when receiving the firearm.

*Id.* (emphasis in original).  Apparently encouraged by the ATF's construction of the GCA's

definition of "person" in the Dakota Silencer Letter, on May 14, 2014, Plaintiff, on behalf of the

Hollis Trust, applied to manufacture a machine gun by submitting ATF Form 5320.1 ("Form 1"),

paid the $200 tax required by the NFA, and attached the Dakota Silencer Letter as support for

RE-8

approval.  Dkt. No. 1 ¶ 37.  On September 8, 2014, ATF returned Plaintiff's Form 1 with a stamp

of approval.  Dkt. No. 1 ¶ 38; Dkt. No. 1-3 (Pl. Ex. C).

On September 10, 2014, ATF contacted Plaintiff and informed him that his Form 1 had

been approved by mistake, and Plaintiff later received another copy of his Form 1, this time with

a stamp of disapproval. Dkt. No. 1 ¶¶ 39-40; Dkt. No. 1-4 (Pl. Ex. D).  A few days later, Special

Agent Aaron R. Wheeler met Plaintiff and delivered a letter from ATF's Chief of the National

Firearms Act Branch, which asked Plaintiff to surrender any machine gun that might have been

manufactured by Plaintiff based on the mistakenly approved Form 1.  Dkt. No. 1 ¶ 42; Dkt. No.

1-5 (Pl. Ex. E).  The letter explained that the exclusion of an unincorporated trust from the

definition of "person" in 18 U.S.C. § 921(a)(1) does not permit an individual to avoid liability

under § 922(o) by placing a machine gun "in trust":

> Pursuant to 26 U.S.C. §§ 5812 and 5822, an application to make a firearm shall be
> disapproved if the making would place the possessor in violation of the law.  The GCA,
> 18 U.S.C. § 922(o) prohibits the possession of machineguns except in limited
> circumstances.  Specifically, pursuant to the statute and implementing regulations, 27
> C.F.R. § 479.105(a), ATF may not approve any private person's application to make and
> register a machinegun after May 19, 1986.
>
> The sole exception to this exists under section 479.105(e) and allows ATF to approve
> such application "provided it is established by specific information" that the making of
> the weapon is at the request and on behalf of a Federal, State or local government entity.
> Please be aware that no such information has been provided, and therefore, pursuant to
> the disapproved application, the firearm is not registered to you or the Jay Aubrey Isaac
> Hollis Revocable Living Trust in the National Firearms Registry and Transfer Record.
> Your continued possession of such a firearm without a valid registration violates the
> NFA.  (26 U.S.C. § 5861(d)).
> . . . .
> Also please note that the GCA defines the term "person" to "include any individual,
> corporation, company, association, firm, partnership, society, or joint stock company."
> *See* 18 U.S.C. § 921(a)(1).  The fact that an unincorporated trust is not included in the
> definition of "person" under the GCA does not mean that an individual may avoid
> liability under section 922(o) by placing a machinegun "in trust."  Where a trust is not an
> entity recognized as a "person" under the applicable law, it cannot make or hold property
> and is disregarded.  Consequently, in terms of an unincorporated trust, ATF must

RE-9

disregard such a non-entity under the GCA and consider the individual acting on behalf of the trust to be the proposed maker/possessor of the machinegun.

Dkt. No. 1-5 (Pl. Ex. E).

Plaintiff argues that ATF unlawfully revoked his Form 1 approval, and contends that ATF's interpretation of the GCA is contrary to the plain language of the statute. Dkt. No. 1 ¶¶ 47-48. On October 30, 2014, Plaintiff filed his Complaint for Declaratory and Injunctive Relief, individually and on behalf of the Hollis Trust, against the Attorney General and the Director of ATF in their official capacities ("Defendants"). Plaintiff requests declaratory and injunctive relief for protection from the application of 18 U.S.C. § 922(o), 26 U.S.C. § 5801 *et. seq.*, and the associated implementing regulations, 27 C.F.R. § 479.105(a), on the alleged basis that they "act as an unlawful *de facto* ban on the transfer or possession of a machine gun manufactured after May 19, 1986." *Id.* ¶ 1. Plaintiff alleges that the foregoing statutes and regulations violate Plaintiff's rights under the Second Amendment, and the Due Process Clause of the Fifth Amendment, including its equal protection component. *Id.* Plaintiff also requests that the GCA be held unconstitutional as an impermissible exercise of congressional power under the Commerce Clause.[1] *Id.* Alternatively, Plaintiff seeks declaratory and injunctive relief that § 922(o) does not prohibit the Hollis Trust from manufacturing or possessing a machine gun

---

[1] Although in paragraph two of his Complaint, Plaintiff seeks relief "declaring the ban on machine guns unconstitutional under the Second, Ninth, and Tenth Amendments," he does not include his Ninth and Tenth Amendment claims as "Counts" in his Complaint, and does not otherwise argue in support of those claims in his Complaint or briefing. *See* Dkt. No. 1. In any event, claims by Plaintiff under the Ninth and Tenth Amendments would be meritless. *See United States v. Broussard*, 80 F.3d 1025, 1041 (5th Cir. 1996) (explaining that the right to possess weapons is not among the rights reserved to citizens under the Ninth Amendment); *United States v. Owens*, 996 F.2d 59, 61 (5th Cir. 1993) ("'If the passage of [a federal criminal statute is] a valid exercise of [Congress' commerce] power, no violation of the Tenth Amendment can occur.'" (quoting *United States v. Lopez*, 459 F.2d 949, 951 (5th Cir. 1972), *cert. denied*, 409 U.S. 878 (1972)).

RE-10

manufactured after May 19, 1986, and/or that Defendants lacked authority to revoke or deny the validity of Plaintiff's approved Form 1.  *Id.* ¶ 3.

Defendants move to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and alternatively move for summary judgment.  Dkt. No. 13.

## DISCUSSION

### I.     Background on the National Firearms Act and Gun Control Act

The National Firearms Act of 1934, 26 U.S.C. Chapter 53, and the Gun Control Act of 1968, 18 U.S.C. Chapter 44, comprise the federal framework governing the firearm market.  The GCA generally makes it unlawful for a person to transfer or possess a machine gun.  18 U.S.C. § 922(o).  The NFA makes it unlawful to manufacture a machine gun in violation of its provisions.  26 U.S.C. § 5861(f).  The NFA defines a "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger," or "any combination of parts from which a machine gun can be assembled."  26 U.S.C. § 5845(b).  The GCA incorporates the NFA's definition of machinegun.  28 U.S.C. § 922(a)(4).  ATF is charged with administering and enforcing both the NFA and GCA, and Defendants oversee ATF.  28 C.F.R. § 0.130(a)(1)-(2).

As initially enacted in 1934, the NFA required all sellers and owners of firearms,[2] including machine guns,[3] to register with the Collector of Internal Revenue; levied a special tax

---

[2] Not all "firearms," as that term is conventionally understood, must be registered under 26 U.S.C. § 5861; rather, the registration requirement generally applies only to those firearms "Congress has found to be inherently dangerous and generally lacking usefulness, except for violent and criminal purposes, such as sawed-off shotguns and hand grenades."  *United States v. Dunn*, 946 F.2d 615, 621 (9th Cir. 1991) (citing 26 U.S.C. § 5845; *see also United States v. Marquez*, 626 F.3d 214, 231 (5th Cir. 2010) (citing 26 U.S.C. § 5845) ("[U]nlike a bomb or machine gun, the 'club' found in Marquez's cell—a tightly-rolled, wetted down magazine that had been allowed to dry—does not reflect an unusual measure of dangerousness.").  The NFA's legislative history suggests that Congress intended the NFA to cover "only such modern and

5

RE-11

on all firearms sales; and required that all firearms transactions be conducted using written order forms.  26 U.S.C. § 5845(b).  The NFA also created a "central registry of all firearms in the United States," the National Firearms Registration and Transfer Record, to be maintained by the Attorney General.  26 U.S.C. § 5841.

The NFA requires each maker of a firearm to obtain authorization as required by Chapter 53 of the Internal Revenue Code and its implementing regulations.  *Id.*  Before a machine gun or any other firearm is made, the maker must (1) file a written application; (2) pay a tax; (3) identify the firearm to be made; (4) identify himself in the application; and (5) obtain the approval of ATF to make and register the firearm, as evidenced on the application form.  26 U.S.C. § 5822.  The implementing regulations prohibit ATF from approving an application "if the making or possession of the firearm would place the person making the firearm in violation of law," including the provisions of the NFA.  26 U.S.C. § 5861(f); 27 C.F.R. § 479.65.

In 1968, Congress passed the Omnibus Crime Control and Safe Streets Act ("Omnibus Act"), Pub. L. No. 90-351, 82 Stat. 197 (1968).  Shortly thereafter, Congress passed the GCA, intending to "regulate more effectively interstate commerce in firearms" to prevent them from "fall[ing] into the hands of the lawless or those who might misuse them," to "assist the States and their political subdivisions to enforce their firearms control laws," and to "help combat the skyrocketing increase in the incidence of serious crime in the United States."  *See* 18 U.S.C. § 921 *et seq.*; S. Rep. No. 89-1866, at 1 (1966).  In 1986, Congress again passed restrictions on machine guns.  *See* Firearms Owners' Protection Act of 1986 ("FOPA"), Pub. L. No. 99-308,

---

lethal weapons, except pistols and revolvers, as could be used readily and efficiently by criminals or gangsters."  H.R. Rep. No. 83-1337, at A395 (1954).

[3] The NFA uses the term "machinegun," but the Court will use the ordinary spelling, "machine gun," except in specific reference to Section 5845(b).  *See* 26 U.S.C. § 5845(b) (defining "machinegun"); 18 U.S.C. § 922(a)(4) (incorporating the NFA's definition of "machinegun").

100 Stat. 449.  Congress' stated reasons for doing so were to strengthen the GCA, to enhance the ability of law enforcement to fight violent crime and narcotics trafficking.  H.R. Rep. No. 99-495, at 2, 7 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 1327.

FOPA added 18 U.S.C. § 922(o) to the GCA, which makes it unlawful for a person to transfer or possess a machine gun, with exceptions for federal, state, and local agencies, and those machine guns lawfully possessed before the enactment of FOPA.  *See* Firearms Owners' Protection Act of 1986, Pub. L. No. 99-308, § 101, 100 Stat. 449 (1986).  Defendants concede that FOPA's legislative history is sparse with respect to the amendment that added § 922(o), but argue that, in construing the statute, courts refer to the general legislative history of gun regulations, finding it unnecessary for Congress to rearticulate its findings on that subject each time it adds a new provision.  *See United States v. Haney*, 264 F.3d 1161, 1169 n. 3 (10th Cir. 2001)).  The GCA defines the term "machinegun" by incorporating the NFA's definition of the term.  *See* 18 U.S.C. § 921(a)(23); 26 U.S.C. § 5845(b).

The relevant differences between the NFA and GCA are as follows:  (1) the GCA defines "person" to include "any individual, corporation, company, association, firm, partnership, society, or joint stock company," 18 U.S.C. § 921(a)(1); and (2) the NFA does not define "person," which means the Internal Revenue Code supplies the definition:  "an individual, a trust, estate, partnership, association, company, or corporation." 26 U.S.C. § 7701(a)(1).

Because the GCA differs from the NFA in that it does not expressly define "person" to include a trust, Plaintiff argues that, to the extent he is acting on behalf of the Hollis Trust, he is exempt from the proscriptions of the GCA.  Defendants move to dismiss Plaintiff's claims for lack of standing and for failure to state a claim, and alternatively, for summary judgment on each of Plaintiff's claims.

## II.   Legal Standards

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  A court must dismiss an action if it lacks subject matter jurisdiction, and the party asserting jurisdiction bears the burden of proof for a Rule 12(b)(1) motion to dismiss.  *Randall D. Wolcott M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming*, 281 F.3d at 161).  In determining whether subject matter jurisdiction is established, a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161.

"Federal courts have no jurisdiction unless a case or controversy is presented by a party with standing to litigate." *De Leon v. Perry*, 975 F. Supp. 2d 632, 645 (W.D. Tex. 2014) *aff'd sub nom. De Leon v. Abbott*, No. 14-50196, 2015 WL 4032161 (5th Cir. July 1, 2015). Accordingly, whether a party has proper standing is a question of subject matter jurisdiction. *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006).  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).  A court's "dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* (citation omitted).

8

RE-14

**B.  Motion to Dismiss for Failure to State a Claim**

In ruling on a Rule 12(b)(6) motion to dismiss, well-pleaded facts are accepted as true, and the Court views "those facts in the light most favorable to the plaintiff[]."  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  However, legal conclusions, couched as factual allegations, are not accepted as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2009).  The factual allegations must be sufficient "to raise a right to relief above the speculative level," and the pleadings must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In ruling on a 12(b)(6) motion to dismiss, a court "may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Randall D. Wolcott, M.D., P.A.*, 635 F.3d at 763 (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

**III.    Standing**

Defendants move to dismiss Plaintiff's Second Amendment and Commerce Cause claims for lack of subject matter jurisdiction, arguing that Hollis lacks standing to assert those claims; specifically, Defendants argue that the injuries Plaintiff identifies are not fairly traceable to Defendants, nor would his injuries be redressed if Hollis were to prevail on his Second Amendment or Commerce Clause claims.

Under Section 2 of Article III of the Constitution, federal courts have jurisdiction over a dispute "only if it is a case or controversy.  This is a bedrock requirement."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (internal quotation marks and citations omitted); *see also Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008).  To have standing, "the plaintiff must have personally suffered some actual or threatened injury that can fairly be traced

9

to the challenged action and is redressable by the courts." *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496–97 (5th Cir. 2007). A plaintiff must prove, and not merely assert, standing to sue in order to meet the case or controversy requirement of Article III. *Id.* The Supreme Court's "'standing inquiry has been especially rigorous when reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Raines*, 521 U.S. at 819–20). Accordingly, to establish standing for each claim, "'a plaintiff must show: (1) he has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury.'" *Barbour*, 529 F.3d at 544 (quoting *Houston Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 617 (5th Cir. 2007)); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *DaimerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

### A. Injury-in-Fact

An injury-in-fact means "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). Hollis argues that he has a legally protected interest in the initially approved Form 1 to manufacture a machine gun, and that his Second Amendment rights were violated by Defendants when they revoked, without authority, his approved Form 1. Defendants do not appear to contest whether Hollis suffered an injury-in-fact. For reasons that are not altogether clear from the record, Hollis sought to make a machine gun. The NFA and GCA prohibit him from doing so, and the statutes levy criminal sanctions if they are defied. Those facts are sufficient to constitute

an injury-in-fact.  More specifically, Hollis faced a real and imminent threat of prosecution after receiving the letter from ATF.  *See* Dkt. No. Pl. Ex. E (asking Hollis to surrender any machine gun made on the basis of the mistakenly approved Form 1).

### B.  Traceability and Redressability

To confer standing, "there must be a causal connection between the injury and the conduct complained of," that is, "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)).  Additionally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 561 (quoting *Simon*, 426 U.S. at 38).  The causation element of standing asks whether the line of causation between a plaintiff's injury and the defendants' alleged wrongdoing is "too attenuated."  *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1385 (5th Cir. 1986) (citation omitted).

Defendants argue that because Texas law independently bars Hollis' possession of a machine gun, he cannot show that any alleged harm he has suffered was caused by application of the NFA and GCA provisions that prohibit him from possessing a machine gun.  *See* Tex. Penal Code § 46.05(a)(2) (prohibiting the intentional or knowing possession, manufacture, transport, repair, or sale of a machine gun); *compare id.* § 46.01(9) (defining "Machine gun" as "any firearm that is capable of shooting more than two shots automatically, without manual reloading, by a single function of the trigger") *with* 26 U.S.C. § 5845(b) (defining "Machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger").  Thus, Defendants argue that the causal relationship between Defendants' conduct in enforcing the

GCA and NFA, and Hollis' injury, is too attenuated, because the Texas prohibition shows that

Hollis' injury is caused by a third party not before the court—the State of Texas.  *See White v.*

*United States*, 601 F.3d 545, 552 (6th Cir. 2010); *San Diego Cnty. Gun Rights Comm. v. Reno*,

98 F.3d 1121, 1130 (9th Cir. 1996).

Defendants further argue that Plaintiff's decision not to challenge the Texas prohibition

on machine guns means that he cannot show redressability.  Even if the Court were to hold the

NFA or GCA unconstitutional as impermissible exercises of Congress' authority under the

Commerce Clause and/or violative of the Second Amendment, the machine gun provision in the

Texas Penal Code would still bar Plaintiff's manufacture and possession of a machine gun.  *See*

*White v. United States*, No. 08-118, 2009 WL 173509, at *5 (S.D. Ohio Jan. 26, 2009); *KH*

*Outdoor, L.L.C. v. Clay County*, 482 F.3d 1299, 1301 (11th Cir. 2007); *McConnell v. FEC*, 540

U.S. 93, 229 (2003).  Thus, Hollis' injury would not be redressed by a favorable ruling under the

NFA and GCA.

Hollis responds that ATF, overseen by Defendants, administers and enforces the GCA

and the NFA, which makes Defendants responsible for Hollis' injury.  He also contends that he

need not challenge the Texas prohibition on machine guns because, had ATF not rescinded the

approval of Hollis' Form 1, he would have been legally entitled to possess the machine gun

under federal and state law, pursuant to the safe harbor provision in the Texas law.  *See* Tex.

Penal Code § 46.05(c) ("It is a defense to prosecution under this section that the actor's

possession was pursuant to registration pursuant to the National Firearms Act, as amended.").

Hollis notes that the NFA could plausibly be upheld as constitutional, while § 922(o) could be

invalidated as facially unconstitutional, or unconstitutional as applied to Hollis.  In such a

scenario, Hollis contends, his Form 1 would be approved under the NFA, and he would have a

defense to prosecution under Texas law.  Hollis argues that the intent of the Texas prohibition is to legalize machine guns that are properly registered with the federal government, and even if the NFA were invalidated on Commerce Clause or Second Amendment grounds, the Texas prohibition would have to be amended accordingly.  Hollis asks this Court to engage in constitutional avoidance and allow him to manufacture and possess his machine gun pursuant to an approved Form 1.

Finally, at oral argument, Plaintiff argued that Texas law defines a machine gun as being capable of firing two rounds per a single function of the trigger, while federal law defines a machine gun as being capable of firing one round per a single function of the trigger.  Hr'g Tr. at 33:23-34:1.  Thus, Hollis claims he could manufacture a "two-round-burst" machine gun that would be lawful under Texas law but not pass muster under the GCA and NFA, implying that striking down the federal prohibition will not necessarily mean that he would still be in violation of Texas law.  Importantly, these allegations were not pled in Plaintiff's Complaint.  Alternatively, as a means of undermining Defendants' standing arguments and avoiding dismissal, Plaintiff stated at the hearing that he would amend his pleadings to withdraw his challenges to the NFA.  Hr'g Tr. at 32:21-33:22.  However, to date, Plaintiff has not sought leave to amend.

Defendants reject Plaintiff's suggestion that the Court should avoid deciding the constitutional validity of the challenged laws, and note that the key element of Hollis' constitutional claims is a challenge to the absoluteness of federal law.  *See* Dkt. No. 1 ¶¶ 50-62; Pl. Resp. Br. at 5–6, 14–17.  Defendants argue that Hollis should not be able to have it both ways by recasting his facial challenges as as-applied challenges in order to establish standing, particularly when Hollis does not specifically challenge Congress' power to regulate *his*

13

RE-19

possession of a machine gun.  *See* Pl. Resp. Br. at 15 (conceding that "ownership of machine

guns can be regulated to a point").

The Court will first address whether Hollis' Second Amendment and Commerce Clause

claims regarding the GCA and NFA are facial or as-applied challenges, which is important in

deciding whether Hollis can satisfy the traceability and redressability requirements.  A facial

challenge to the constitutionality of a statute requires the challenge to "establish that no set of

circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S.

739, 745 (1987).  "[S]tatutes should be construed whenever possible so as to uphold their

constitutionality."  *United States v. Vuitch*, 402 U.S. 62, 70 (1971).  Even if a complaint may be

read as asserting a facial challenge, courts are advised to first determine the validity of the statute

as-applied.  *See Renne v. Geary*, 501 U.S. 312, 324 (1991); *see also Bigelow v. Virginia*, 421

U.S. 809, 817 (1975) (internal quotation marks and citations omitted) ("Declaring a statute

facially unconstitutional because of overbreadth is, manifestly, strong medicine, and has been

employed by the Court sparingly and only as a last resort.").  This Court will endeavor to

determine the validity of the NFA and GCA as applied to Hollis, individually and as trustee of

the Hollis Trust, based on the following representative allegations from Plaintiff's Complaint:

- Dkt. No. 1 ¶ 52 ("The NFA and its associated regulations violate Plaintiff's Second Amendment rights as it mandates the paying of a tax to exercise a constitutionally protected right akin to a poll tax.");

- *id.* ¶ 61 ("As machineguns do not pose a substantial effect on interstate commerce, Congress cannot rely on the Commerce Clause to ban machineguns, and therefore 18 U.S.C. § 922(o) . . . is unconstitutional.");

- *id.* ¶ 28 ("As there is no substantial effect on interstate commerce when an individual (or trust) makes a machinegun, the complete ban on this class of weapons is unconstitutional.");

RE-20

- *id.* ¶ 31 ("Law abiding citizens, like the Plaintiff, whom [sic] desire to manufacture and own these types of arms[,] are not the type of individuals that use these arms in crimes.");

- *id.* ¶ 51 ("The machinegun ban in § 922(o) and associated regulations violate Plaintiff's Second Amendment rights.");

- *id.* ¶ 54 ("Plaintiff's Second Amendment rights are violated by the threat of legal action by ATF subsequently disapproving an already approved Form 1 application and placing him in legal jeopardy . . . .");

- *id.* ¶ 55 ("Additionally, Plaintiff's Second Amendment rights are violated by the [ATF] disapproving his Form 1 to make a machinegun under his trust.");

- *id.* ¶ 56 ("18 U.S.C. § 922(o) and 26 U.S.C. § 5801 *et seq.* are unconstitutional or unconstitutional as applied against Plaintiff.").

Although Plaintiff's pleadings are not a model of clarity, the Supreme Court's guidance to construe ambiguous challenges as being as-applied causes the Court to interpret his Second Amendment and Commerce Clause allegations as containing both facial and as-applied challenges to the GCA and NFA.

The next issue is whether the Texas law prohibiting the possession and manufacture of machine guns means that Hollis' injury—not being able to make, possess, or transfer a machine gun—cannot be fairly traced to Defendants, or redressed by a favorable ruling by this Court. The relevant Texas statute states:

(a) A person commits an offense if the person intentionally or knowingly possesses, manufactures, transports, repairs, or sells . . . (2) a machine gun . . . .

(c) It is a defense to prosecution under this section that the actor's possession was pursuant to registration pursuant to the National Firearms Act, as amended.

Tex. Penal Code §§ 46.05(a)(2), 46.05(c) (citing NFA, 26 U.S.C. § 5801 *et seq.*).

"Machine gun" means any firearm that is capable of shooting more than two shots automatically, without manual reloading, by a single function of the trigger.

RE-21

*Id.* § 46.01(9).  Thus, Defendants argue that the similar, but not identical, state law ban shows that Hollis' injury is attributable to a third-party, the State of Texas, and that his alleged injury's relationship to the federal ban, as set forth in the GCA and NFA, is not fairly traceable to Defendants, nor would a favorable ruling by this Court redress his injury.

In *White v. United States*, relied on by Defendants, the Sixth Circuit considered a pre-enforcement challenge to the Animal Welfare Act, 7 U.S.C. §§ 2131–56, which restricted cockfighting and "animal fighting ventures" that affected interstate commerce.  601 F.3d at 548.  The Sixth Circuit found that the economic injuries suffered by the plaintiffs were not *only* traceable to the Animal Welfare Act, because cockfighting was banned in all fifty states and the District of Columbia.  *Id.* at 552 (citing *Reno*, 98 F.3d at 1130).  The court also found that the claimed injuries would not be redressed by the relief the plaintiffs sought, notwithstanding the court's ruling on the constitutional invalidity of the Animal Welfare Act, because the state prohibitions would remain in place.  *Id.* at 552.

In *San Diego County Gun Rights Committee v. Reno*, the Ninth Circuit considered a pre-enforcement challenge to the constitutionality of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994) ("Crime Control Act"), which amended the GCA to prohibit the transfer and possession of certain assault weapons and imposed new requirements on federal firearms licensees.  98 F.3d at 1124.  The plaintiffs, who were two unincorporated associations, a federal firearms dealer, a retired Marine Corps officer, and the president of the San Diego Militia, sought declaratory and injunctive relief under the Commerce Clause and the Second and Ninth Amendments.  *Id.*  The Ninth Circuit found that its precedent at that time foreclosed the plaintiffs' assertion of standing under the Second Amendment, because the court had held the Second Amendment did not protect the possession

16

RE-22

of a weapon by a private citizen.  *Id.* at 1124–25 (citing *Hickman v. Block*, 81 F.3d 98, 101 (9th

Cir. 1996), *cert denied*, 519 U.S. 912 (1996)).

In assessing the plaintiffs' alleged economic injury—the Crime Control Act had allegedly

caused the price of certain firearms not subject to its provisions to increase from 40% to 100%—

the *Reno* court found that the Crime Control Act was "neither the only relevant piece of

legislation nor the sole factor affecting the price of grandfathered weaponry."  *Id.* at 1130.  "In

California, the Roberti-Roos Assault Weapons Control Act of 1989 also ban[ned] the

manufacture, sale and distribution of certain delineated assault weapons."  *Id.* at 1130 (internal

citation omitted).  The court concluded it was speculative to find that it was the Crime Control

Act that significantly increased the price of such firearms .  *Id.* (citing *Common Cause v. Dep't of

Energy*, 702 F.2d 245, 251 (D.C. Cir. 1983) ("[W]here the injury is alleged to occur within a

market context, the concepts of causation and redressability become particularly nebulous and

subject to contradictory, and frequently unprovable, analyses.")).  The court also found it

significant that it was the third-party weapons dealers and manufacturers, not the defendants,

who actually raised the prices of the assault weapons; although the Crime Control Act played a

role in restricting the supply of such weapons, it did not specifically direct vendors to increase

the price of regulated weapons.  *Id.*  Consequently, the court held that the plaintiffs' economic

injury was caused by the independent action of multiple third parties not before the court.  *Id.*

(citing *Lujan*, 504 U.S. at 560; *Boating Indus. Associations v. Marshall*, 601 F.2d 1376, 1380

(9th Cir. 1979) ("[I]f the injury stems not from the government action disputed, but from an

independent source, a federal court cannot provide the plaintiff redress by directing the

government to alter its action.")).

RE-23

The Texas and federal prohibitions are enforced by different sovereigns and there are differences in their provisions.  For example, 18 U.S.C. § 922(o) and 26 U.S.C. § 5861 only prohibit the transfer, possession, receiving, or making of a machine gun, and require no culpable mental state, while Tex. Penal Code § 46.05(a) prohibits the intentional or knowing possession, manufacture, transport, repair, or sale of a machine gun.  *Compare* 18 U.S.C. § 922(o) *with* Tex. Penal Code § 46.05(a).  Moreover, "machine gun" is defined differently in each statute:

> "Machine gun" means any firearm that is capable of shooting more than two shots automatically, without manual reloading, by a single function of the trigger."  Tex. Penal Code § 46.01(9)

> "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.  26 U.S.C. § 5845(b).

Were the Court to invalidate the GCA and NFA, Section 46.05 of the Texas Penal Code would independently prohibit Hollis from manufacturing an M-16 machine gun.[4]  *See Bishop v. Smith*, 760 F.3d 1070, 1078 (10th Cir.) *cert. denied*, 135 S. Ct. 271 (2014) (citing *White*, 601 F.3d at 549) ("Courts have concluded that plaintiffs fail to establish redressability only when an unchallenged legal obstacle is enforceable separately and distinctly from the challenged

---

[4] Hollis noted at oral argument that Texas law defines a machine gun as being capable of firing two rounds per a single function of the trigger, while federal law defines a machine gun as being capable of firing one round per a single function of the trigger; therefore, Hollis argued that he could manufacture a "two-round-burst" machine gun that would be lawful under Texas law but not pass muster under the GCA and NFA. Hr'g Tr. at 33:23-34:1. There is no allegation or evidence before the Court that Plaintiff sought to make such a machine gun, which makes Plaintiff's argument merely academic.  *See Ramming*, 281 F.3d at 161 ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." (citation omitted)).

provision."); *see also KH Outdoor, L.L.C. v. Clay Cnty., Fla.*, 482 F.3d 1299, 1303 (11th Cir. 2007) ("Any injury KH Outdoor actually suffered from the [county ordinance] is not redressable because the applications failed to meet [unchallenged state regulations].").

Hollis argues that Tex. Penal Code § 46.05(c), a safe harbor provision for those who comply with the NFA, means that he need not necessarily challenge the Texas law. According to Hollis, this Court can either construe the GCA and NFA as allowing the Hollis Trust to make or possess a machine gun, or hold § 922(o) to be overbroad or unconstitutional as applied to Hollis, and either ruling would bring Hollis' conduct within the Texas safe harbor provision. Hollis contends that even if the NFA were held unconstitutional, the Texas statute would be amended accordingly because the intent of the Texas ban is to make machine guns legal if properly registered with the federal government. Defendants reply that invalidating federal laws pursuant to Plaintiff's Second Amendment and Commerce Clause claims would cause this Texas safe harbor provision to simply "fall away." The speculative nature of these potential outcomes illustrates the flaw in Plaintiff's redressability argument. A "[plaintiff] must demonstrate redressability—a '*substantial likelihood*' that the requested relief will remedy the alleged injury in fact." *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (emphasis added) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41 (1976)); *see also McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 229 (2003) (explaining that if the Court were to strike down the federal provisions on campaign contributions, it would not remedy the plaintiffs' injury because limitations imposed by state law would remain), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). To demonstrate traceability and redressability, Plaintiff must somehow prevail in his Second Amendment and Commerce Clause claims, yet still benefit from the Texas safe harbor provision,

19

RE-25

which is directly tied to the statute—the NFA—that he asks the Court to invalidate. Plaintiff's allegations, even construed as as-applied challenges, do not allow for such a potentiality.[5]

Hollis asks this Court to speculate about the activities of third parties not before the Court, such as whether the Texas Legislature would amend Tex. Penal Code § 46.05 if the NFA and GCA were held to be unconstitutional or construed to not apply to the Hollis Trust. *See Lujan*, 504 U.S. at 561 (explaining that a plaintiff must do more than speculate that a favorable ruling will redress his injuries). Were the Court to strike down the NFA on Second Amendment grounds, it would raise obvious questions about the validity of Section 46.05 of the Texas Penal Code. However, post-*Heller* Second Amendment cases instruct this Court that the validity of state and local regulation turns on the particular provision at issue. *See, e.g.*, *Drake v. Filko*, 724 F.3d 426, 430 (3d Cir. 2013) (upholding New Jersey handgun permit law); *Peruta v. Cty. of San Deigo*, 742 F.3d 1144 (9th Cir. 2014) (invalidating county requirement that person show pressing need for self-protection to receive concealed weapon permit); *Nat'l Rifle Ass'n of Am, Inc. v. McGraw*, 719 F.3d 338 (5th Cir. 2013) (upholding Texas statutory scheme prohibiting 18-to-20 year old adults from carrying handguns in public).

---

[5] The Court is aware of a recent decision from the Eastern District of Pennsylvania, involving nearly identical facts and arguments to those in this case. *See United States v. One Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber, Serial No. LW001804*, No. CIV.A. 15-2202, 2015 WL 4461603, at *13 (E.D. Pa. July 22, 2015). In that case, the court found that the Pennsylvania analogue to the GCA and NFA "piggybacks on an existing federal statute by incorporating its requirements," and the plaintiff's substantial compliance with the NFA's requirements brought the plaintiff within the safe harbor exception, leaving no independent ground to prohibit his machine gun possession. *Id.* at 12. Thus, the court held the plaintiff met the traceability requirement. *Id.* The court also found the redressabilty requirement was satisfied because a decision striking down the NFA would also "sweep away the Pennsylvania prohibition on machine guns." *See id.* (citing *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010)). This Court notes that the differences in the Texas statute and the NFA are meaningful enough for this Court to refrain from concluding that the Texas statute merely "piggybacks" on the NFA, or that a ruling that the NFA is violative of the Second Amendment would automatically "sweep away" the Texas statute.

While the prospect of Hollis prevailing on his Second Amendment claim raises the possibility, but not a substantial likelihood, that the Texas ban might also be invalidated, Hollis offers no argument whatsoever that a ruling invalidating the NFA under the Commerce Clause would affect the validity of the Texas ban.[6]  *See United States v. Lopez*, 514 U.S. 549, 567 (1995) (distinguishing congressional authority under the Commerce Clause from the general police power retained by the States).

Therefore, because Hollis has failed to satisfy the traceability and redressability requirements of Article III standing with respect to his Second Amendment and Commerce Clause claims, Defendants' Rule 12(b)(1) Motion to Dismiss those claims is granted.[7]

## IV.   Second Amendment

Even if the Court were to find that Hollis has standing to assert his Second Amendment Claim, Hollis' Second Amendment claim is unsustainable as a matter of law.

The Fifth Circuit has adopted a two-step framework for analyzing gun restrictions challenged on Second Amendment grounds:  "the first step is to determine whether the

---

[6] Hollis also relies on *Mance v. Holder* to show traceability and redressability.  In *Mance v. Holder*, another member of this court considered the constitutional validity of the federal regulatory scheme for buying, selling, and transporting handguns over state lines.  74 F. Supp. 3d 795 (N.D. Tex. 2015).  This case is easily distinguishable from *Mance*, where the court determined that the sole cause of the customer plaintiffs' injury was the federal interstate transfer ban on handguns, and the handgun seller had third-party standing.  As Defendants note, Texas has its own machine gun ban that would prohibit Hollis from making a machine gun even if the federal machine gun ban did not exist.  Thus, this Court cannot say that the sole cause of Hollis' inability to make a machine gun is the federal machine gun ban.  Furthermore, there is no evidence in the record, nor any allegation in Hollis' Original Complaint, that he sought to sell a machine gun.  Consequently, there is no basis for Hollis to establish third-party standing by asserting the rights of customers.

[7] Hollis argues that he is challenging ATF's ability to revoke an already-approved Form 1, and this Court can rule that ATF lacked the authority to revoke the approval, which would redress Hollis' injury.  Hollis contends that there was no reconsideration by ATF, with the usual notice and intent to reconsider a decision.  *See Dun & Bradstreet Corp. Fund v. U.S. Postal Serv.*, 946 F.2d 189, 193–94 (2d Cir. 1991).  However, this argument goes to Hollis' Fifth Amendment Due Process claim, which Defendants do not move to dismiss on standing grounds.

challenged law impinges upon a right protected by the Second Amendment—that is, whether the

law regulates conduct that falls within the scope of the Second Amendment's guarantee; the

second step is to determine whether to apply intermediate or strict scrutiny to the law, and then to

determine whether the law survives the proper level of scrutiny." *Nat'l Rifle Ass'n of Am., Inc. v.*

*Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 194 (5th Cir. 2012)

("*NRA*").

To determine whether a law impinges on a right protected by the Second Amendment,

the Fifth Circuit looks to whether the law harmonizes with the historical traditions associated

with the Second Amendment guarantee.  *NRA*, 700 F.3d at 194.  "If the challenged law burdens

conduct that falls outside the Second Amendment's scope, then the law passes constitutional

muster."  *Id.* at 195 (citation omitted).  Defendants argue that the inquiry in this case should end

at the first step because the challenged federal laws do not restrict the possession of weapons

protected by the Second Amendment.  In doing so, Defendants rely on the following excerpts

from *District of Columbia v. Heller*:

> Like most rights, the right secured by the Second Amendment is not unlimited. From
> Blackstone through the 19th-century cases, commentators and courts routinely explained
> that the right was not a right to keep and carry any weapon whatsoever in any manner
> whatsoever and for whatever purpose. For example, the majority of the 19th-century
> courts to consider the question held that prohibitions on carrying concealed weapons
> were lawful under the Second Amendment or state analogues.  Although we do not
> undertake an exhaustive historical analysis today of the full scope of the Second
> Amendment, *nothing in our opinion should be taken to cast doubt on longstanding
> prohibitions on the possession of firearms* by felons and the mentally ill, or laws
> forbidding the carrying of firearms in sensitive places such as schools and government
> buildings, or laws imposing conditions and qualifications on the commercial sale of arms
> . . . .
> We also recognize another important limitation on the right to keep and carry
> arms. *Miller* said, as we have explained, that the sorts of weapons protected were those
> "in common use at the time."  We think that limitation is fairly supported by the
> historical tradition of prohibiting the carrying of *"dangerous and unusual weapons."*

554 U.S. 570, 626–27 (2008) (internal citations omitted) (emphasis added).  The Fifth Circuit in *NRA* noted that it was not perfectly clear whether *Heller's* "presumptively lawful regulatory measures" were deemed lawful because they fell outside the Second Amendment's scope, or because they withstood the fitting level of scrutiny.  *See NRA*, 700 F.3d at 196.  However, the Fifth Circuit stated "that a longstanding, presumptively lawful regulatory measure—whether or not it is specified on *Heller*'s illustrative list—would likely fall outside the ambit of the Second Amendment; that is, such a measure would likely be upheld at step one of our framework."  *Id.*  Indeed, the Fifth Circuit arguably went further:

> *Heller* demonstrates that a regulation can be deemed "longstanding" even if it cannot boast a precise founding-era analogue.  After all, *Heller* considered firearm possession bans on felons and the mentally ill to be longstanding, yet the current versions of these bans are of mid–20th century vintage.

*Id.* at 196-97 (citations omitted).  Thus, Defendants argue that longstanding state restrictions on the purchase or possession of machine guns show that bans on fully automatic weapons are firmly and historically rooted.  *Id.* at 204; *see also Morrison v. State*, 170 Tex. Crim. 218, 221 (1960) (finding a machine gun is not commonly kept for self-defense, and a law making it unlawful to possess a machine gun is not violative of the Texas constitutional right to bear arms).  At least twenty-one states have enacted restrictions on the possession, acquisition, and sale of machine guns, and Defendants argue that many of those states had Second Amendment analogues in their respective State constitutions, which shows that machine guns are presumptively not protected from regulation by the Second Amendment.  *See NRA*, 700 F.3d at 196.  Defendants also contend that these state laws also demonstrate that laws prohibiting an entire "class of weapons" as dangerous or unusual are not exceptional.

Hollis contends that the "dangerous and unusual" doctrine does not apply to the mere possession of a weapon, but rather only applies to the manner in which the right is exercised, and

this case is not about the carrying of dangerous and unusual weapons, but rather only about the possession of a firearm.  For example, Hollis argues that the Supreme Court's discussion of "dangerous and unusual weapons" is derived from the common law offense of "affray."  Pl. Resp. Br. at 12–13 (citing 3 B. Wilson, THE WORKS OF THE HONOURABLE JAMES WILSON (1804) ("[T]here may be an affray, where there is no actual violence; as where a man arms himself with dangerous and unusual weapons, in such a manner as will naturally diffuse a terrour [sic] among the people."); J. Dunlap, THE NEW-YORK JUSTICE 8 (1815) ("It is likewise said to be an affray, at common law, for a man to arm himself with dangerous and unusual weapons, in such manner as will naturally cause terror to the people.")).  Hollis argues that the common law's definition of "dangerous" in the context of an "affray" was any item that could be used to take human life through physical force, and "unusual" meant to use a protected arm in a manner which creates an affray.  Thus, Hollis argues that it is the *manner* in which the right is exercised, not the type of weapon that is carried, that must be analyzed under the dangerous and unusual doctrine. Defendants respond, however, that the common law crime of affray cannot displace precedent by the Supreme Court that dangerous and unusual weapons fall outside the scope of the Second Amendment, and *Heller* made it clear that the scope of the modern right is not cabined by historical examples.  *Heller*, 554 U.S. at 582, 627–28; *see United States v. Marzzarella*, 614 F.3d 85, 90–91 (3d Cir. 2010) (explaining that the right to bear arms affords no protection to weapons not typically possessed by law-abiding citizens for lawful purposes).

Thus, the first issue before the Court is whether the federal machine gun ban is constitutionally sanctioned by the Supreme Court's discussion of "dangerous and unusual weapons."  That analysis must begin with *United States Miller*, which was the basis for the "dangerous and unusual" weapons discussion in *Heller*.  307 U.S. 174, 175 (1939).  In *Miller*,

the defendants were convicted of transporting in interstate commerce a double-barrel, sawed-off

shotgun, in contravention of the NFA.  *Id.*  The defendants challenged the NFA as violative of

the police power reserved to the States, and the Second Amendment.  *Id.* at 176.  The Supreme

Court held that:

> In the absence of any evidence tending to show that possession or use of a shotgun
> having a barrel of less than eighteen inches in length at the time has some reasonable
> relationship to the preservation or efficiency of a well-regulated militia, we cannot say
> the Second Amendment guarantees the right to keep and bear such an instrument.
> Certainly it is not within judicial notice that this weapon is any part of the ordinary
> military equipment or that its use could contribute to the common defense.

*Id.* at 178 (citation omitted).  In discussing the *Miller* decision, the Supreme Court in *Heller*

described *Miller*'s holding as an "important limitation on the right to keep and carry arms"—the

weapons protected were those "in common use at the time."  *Heller*, 554 U.S. at 627 (citing

*Miller*, 307 U.S. at 179).  The Court found the limitation articulated in *Miller* was "fairly

supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual

weapons.'"  *Id.* (citations omitted).  Importantly, the Court then considered the objection that, if a

"ban on M-16 rifles and [other similar bans on military weapons]" are valid under the Second

Amendment, then the right conferred—"the right of the people to keep and bear Arms"—is

completely detached from the prefatory clause—"A well regulation Militia, being necessary to

the security of a free State."  *Id.*   The Court responded:

> But as we have said, the conception of the militia at the time of the Second Amendment's
> ratification was the body of all citizens capable of military service, who would bring the
> sorts of lawful weapons that they possessed at home to militia duty.  It may well be true
> today that a militia, to be as effective as militias in the 18th century, would require
> sophisticated arms that are highly unusual in society at large.  Indeed, it may be true that
> no amount of small arms could be useful against modern-day bombers and tanks.  But the
> fact that modern developments have limited the degree of fit between the prefatory clause
> and the protected right cannot change the interpretation of that right.

*Id.* at 627–28.  Thus, the Court's holding in *Miller*, read in conjunction with the Court's

discussion of *Miller* and M-16 rifles in *Heller*, establishes that possessing a machine gun, and

specifically an M-16 rifle, does not fall within the scope of the Second Amendment.  Hollis'

attempt to reargue the common law crime of "affray" does not succeed in light of the Supreme

Court's discussion of the *exact automatic weapon* at issue in this case, the M-16 machine gun.  If

the Supreme Court had been limiting its discussion to the carrying of such a weapon, and not to

its mere possession, as Hollis suggests, the Court would have more clearly said so.  Hollis'

distinction between "carrying" and "possession" of automatic weapons is unpersuasive, as the

Court in *Heller* described the dangerous and unusual weapons doctrine from *Miller* as a

limitation on the right to "keep *and* carry arms."  *See Heller*, 554 U.S. at 627 (emphasis added).

The Court's discussion of *Miller* was not ambiguous:

> We may as well consider at this point (for we will have to consider eventually) *what*
> types of weapons *Miller* permits. Read in isolation, *Miller's* phrase "part of ordinary
> military equipment" could mean that only those weapons useful in warfare are protected.
> That would be a startling reading of the opinion, since it would mean that the National
> Firearms Act's restrictions on machineguns (not challenged in *Miller*) might be
> unconstitutional, machineguns being useful in warfare in 1939. We think that *Miller* 's
> "ordinary military equipment" language must be read in tandem with what comes after:
> "[O]rdinarily when called for [militia] service [able-bodied] men were expected to appear
> bearing arms supplied by themselves and of the kind in common use at the time."  The
> traditional militia was formed from a pool of men bringing arms "in common use at the
> time" for lawful purposes like self-defense. "In the colonial and revolutionary war era,
> [small-arms] weapons used by militiamen and weapons used in defense of person and
> home were one and the same." Indeed, that is precisely the way in which the Second
> Amendment's operative clause furthers the purpose announced in its preface. We
> therefore read *Miller* to say only that the Second Amendment does not protect those
> weapons not typically possessed by law-abiding citizens for lawful purposes, such as
> short-barreled shotguns.

*Heller*, 554 U.S. at 622–25 (citations omitted).  Thus, *Heller* recognized that the right to keep

and carry bear arms only extends to those arms in common use at the time, and the right to keep

26

and bear arms does not include a right to possess a specific firearm or type of firearm.[8]  *See*

*Heller*, 554 U.S. at 627.  It is also worth noting that the Supreme Court clearly found startling the

prospect that the machine gun ban would have been unconstitutional, thereby suggesting the

constitutional validity of the machine gun restrictions in the NFA and GCA.  *See id.* at 624.

Every federal circuit that has addressed the issue has held that there is no Second

Amendment right to possess a machine gun.  *See United States v. Henry*, 688 F.3d 637 (9th Cir.

2012) ("We agree with the reasoning of our sister circuits that machine guns are 'dangerous and

unusual weapons' that are not protected by the Second Amendment."); *Marzzarella*, 614 F.3d at

94 ("[T]he the Supreme Court has made clear the Second Amendment does not protect [machine

guns]."); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("Machine guns are not in

common use by law-abiding citizens for lawful purposes and therefore fall within the category of

dangerous and unusual weapons that the government can prohibit for individual use."); *Hamblen*

*v. United States*, 591 F.3d 471, 474 (6th Cir. 2009) ("[W]hatever the individual right to keep and

bear arms might entail, it does not authorize an unlicensed individual to possess unregistered

machine guns for personal use."); *Heller v. District of Columbia*, 670 F.3d 1244, 1270 (D.C. Cir.

2011) ("[F]ully automatic weapons, also known as machine guns, have traditionally been banned

and may continue to be banned after *Heller*."); *Friedman v. City of Highland Park, Illinois*, 784

F.3d 406, 408 (7th Cir. 2015) ("*Heller* deemed a ban on private possession of machine guns to be

obviously valid.")

---

[8] Defendants contend that members of the founding-era militia were expected to procure their
own firearms when called into service, and the militia would not have been well-regulated if
there were no restrictions on which arms members could possess.  *See Miller*, 307 U.S. at 179.
As a result, government officials specified the type of weapons militia members could procure
and maintain.  Def. Br. at 15 n.8.  Thus, the Second Amendment's text and history show that the
substantive right secured did not confer an unfettered choice of arms.  *See id.* (citing Second
Militia Act of 1792, which provided in detail the types of firearms and ammunition for militia
members to procure when called into service).

27

Therefore, *Heller* expressly forecloses Plaintiff's Second Amendment challenge to the

NFA and GCA's prohibition on the possession of a machine gun, and the Court need not engage

in the means-end analysis.[9]  Accordingly, were Plaintiff to have standing to assert his Second

Amendment claim, his claim would nonetheless be dismissed for failure to state a claim.

## V.   Commerce Clause

As is true for Plaintiff's Second Amendment claim, even if Plaintiff had standing to

assert his claim under the Commerce Clause, it would fail as a matter of law.  Plaintiff

challenges § 922(o) as exceeding Congress' constitutional authority under the Commerce Clause.

He asserts that Congress has no authority to ban machine guns under § 922(o) because machine

guns do not substantially affect interstate commerce.  More specifically, Plaintiff argues that

"Congress banned an entire class of firearms that were rarely, if ever, used in crime, merely

because it sounded good to ban them."  Dkt. No. 1 ¶ 7.

This Court disagrees, adhering to well-established precedent, and finds that the

manufacturing, possession, and trafficking of machine guns does substantially affect interstate

commerce, and that Congress was well within its Commerce Clause authority in enacting

---

[9] On June 30, 2015, Plaintiff submitted a Notice of Supplemental Authority to raise a recent decision of the Supreme Court, *Johnson v. United States*, 135 S Ct. 2551 (2015), as support for his Second Amendment claim.  In *Johnson*, the majority held that the residual clause of the Armed Career Criminal Act's definition of "violent felony" was void for vagueness under the Due Process Clause of the Fifth Amendment.  *Johnson*, 135 S Ct. at 2557.  Plaintiff focuses on Justice Thomas' concurrence, in which Justice Kennedy joined, where he stated that he would have simply found that the possession of a short-barreled shotgun is not a "violent felony" under the ACCA.  *Id.* at 2564.  Justice Thomas rejected the government's argument that short-barreled shotguns are among "those weapons not typically possessed by law-abiding citizens for lawful purposes."  *Id.* at 2565 (citing *Heller*, 554 U.S. at 625).  Justice Thomas noted that "[u]ntil the weapon is assembled, loaded, or used . . . [t]he risk of injury to others from mere possession of [such a] firearm is too attenuated" to be a violent felony under the residual clause.  *Id.* at 2566. As the foregoing illustrates, Justice Thomas addressed whether possession of a dangerous firearm constitutes a violent felony under the ACCA, an altogether different question from the one before this Court, and his discussion in no way undermines the majority's discussion in *Heller* of bans on "dangerous and unusual weapons."

§ 922(o).  *See United States v. Kirk*, 105 F.3d 997, 998 (5th Cir. 1997) (en banc) (per curiam); *United States v. Knutson*, 113 F.3d 27, 30–31 (5th Cir. 1997) (per curiam) (reaffirming *Kirk*, and upholding the constitutionality of § 922(o) under the commerce power).

The Commerce Clause grants Congress the power "[t]o regulate Commerce . . . among the several states." U.S. Const. art. I, § 8, cl. 3.  The Supreme Court has recognized three categories under which Congress may exercise its commerce power: (1) "channels of interstate commerce," (2) "instrumentalities of interstate commerce, and persons or things in interstate commerce," and (3) "activities that substantially affect interstate commerce."  *Gonzalez v. Raich*, 545 U.S. 1, 16–17 (2005).  Although purely local activities generally do not fall within Congress' commerce power, the Supreme Court has recognized Congress' authority to "regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."  *Id.* at 17 (citing *Wickard v. Filburn*, 317 U.S. 111, 128–29 (1942)).  Thus, this Court need not conclude that "[Plaintiff's] activities, taken in the aggregate, substantially affect interstate commerce in fact," but instead need only find that there was a rational basis for Congress to conclude that machine guns, taken in the aggregate, substantially affect interstate commerce.  *See Raich*, 545 U.S. at 22.  In *Raich*, for example, the Supreme Court upheld Congress' authority to regulate locally cultivated marijuana because it found a rational basis for Congress to believe that "the failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the [Controlled Substances Act]."  *Id.*

Plaintiff argues that a categorical ban on machine guns is unconstitutional, relying only on congressional testimony given by Attorney General Homer S. Cummings at the time of the NFA's enactment in 1934.  Dkt. No. 1 ¶ 29.  Even if the Court were to accept that testimony as unimpeachable legal authority, which it is not, Plaintiff overlooks significant developments in

Commerce Clause jurisprudence since Attorney General Cummings testified.  *See Raich*, 545

U.S. at 22; *Wickard*, 317 U.S. at 128–29.  Plaintiff rests his argument on the theory that a

machine gun can be manufactured without having any influence on interstate commerce.  *See*

Dkt. No. 1 ¶ 26.  Citing Attorney General Cummings' statement that Congress lacked any

"inherent police powers to . . . deal with local crime," Plaintiff argues that a machine gun that has

not traveled in interstate commerce cannot be regulated under the Commerce Clause.  *National*

*Firearms Act of 1934: Hearings Before the House Comm. on Ways & Means*, 73rd Cong., 2d

Sess. 8 (1934); Dkt. No. 1 ¶ 29.  However, as discussed above, even a purely local activity can

be regulated if it is part of a greater "economic class of activities" having a substantial effect on

interstate commerce.  *Raich*, 545 U.S. at 16–17 (citing *Wickard*, 317 U.S. at 128–29).

The Fifth Circuit has specifically held that § 922(o) falls within Congress' commerce

power.  *Kirk*, 105 F.3d at 998; *see also Knutson*, 113 F.3d at 30–31.  In *Kirk*, the Fifth Circuit

found that Congress had a rational basis for determining "that post-1986 machineguns fall within

its power to regulate interstate commerce," noting that *every court of appeals* "ha[d] determined

that § 922(o) does not exceed the authority granted to Congress by the Commerce Clause."  105

F.3d at 998 (involving appellant's constitutional challenge to § 922(o) after the Supreme Court's

decision in *United States v. Lopez*, 514 U.S. 549 (1995), which limited Congress' authority to

regulate guns near school zones).  After receiving further clarification from the Supreme Court in

*Raich*, federal courts have repeatedly upheld the constitutionality of federal firearms laws,

including § 922(o), under *Raich*.  *See United States v. Henry*, 688 F.3d 637, 641 (9th Cir. 2012)

(stating that the Ninth Circuit and "[e]very other circuit that has reached the issue" has found

§ 922(o) constitutional under Congress' commerce power); *Montana Shooting Sports Ass'n v.*

*Holder*, 727 F.3d 975, 982–83 (9th Cir. 2013) (same).

Moreover, the NFA and GCA are components of "comprehensive legislation to regulate the interstate market in a fungible commodity," much like the Controlled Substances Act at issue in *Raich*. *See Raich*, 545 U.S. at 22. The Sixth Circuit has explained that "[g]uns are a fungible commodity for which there is an established interstate market" and that "Section 922(d)(1) is . . . part of a larger regulatory framework." *United States v. Rose*, 522 F.3d 710, 717–18 (6th Cir. 2008). The failure to regulate machine guns locally would undoubtedly frustrate Congress' purpose of limiting the manufacture and possession of machine guns and other particularly dangerous firearms. *See Huddleston v. United States*, 415 U.S. 814, 825 (1974) (noting that Congress, in enacting the GCA, sought "to insure [sic] that, in the course of sales or other dispositions by these dealers, weapons could not be obtained by individuals whose possession of them would be contrary to the public interest"). Thus, Congress had a rational basis for its belief that machine guns substantially affect interstate commerce, primarily because the "failure to regulate the intrastate manufacture and possession" of machine guns "would leave a gaping hole" in comprehensive federal firearms regulation. *See Raich*, 545 U.S. at 22.

The Supreme Court's recent holding in *National Federation of Independent Business v. Sebelius* does not undermine the conclusion that § 922(o) is a valid exercise of the commerce power. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012). In *Sebelius*, the Supreme Court held that it was impermissible for Congress to use the individual mandate in the Affordable Care Act to require certain individuals to purchase health insurance, finding that the statute "compel[led] individuals to *become* active in commerce by purchasing [health insurance]," and "[c]onstruing the Commerce Clause to regulate individuals *because* they are doing nothing would open a new and potentially vast domain to congressional authority." *Id.* at 2587 (emphasis in original). In contrast, § 922(o) affects interstate commerce as a *prohibition* on

31

RE-37

conduct, not a means of compulsion.  *See Sebelius*, 132 S. Ct. at 2587; *Henry*, 688 F.3d at 642 n. 5 (finding that *Sebelius* did not affect the constitutionality of § 922(o)); *see also United States v. Alcantar,* 733 F.3d 143, 146 (5th Cir. 2013) *cert. denied,* 134 S. Ct. 1570 (2014) ("[*Sebelius*] did not address the constitutionality of § 922(g)(1), and it did not express an intention to overrule the precedents upon which our cases—and numerous other cases in other circuits—relied in finding statutes such as § 922(g)(1) constitutional.").  The holding in *Sebelius* is therefore distinguishable and has no effect on the determination of the constitutionality of the provision at issue here.

Thus, Plaintiff has failed to state a claim for relief insofar as he claims § 922(o) is an invalid exercise of Congress' authority under the Commerce Clause.

## VI.    Due Process

Plaintiff next asserts that Defendants have deprived him of his property interest in the approved Form 1, in violation of the Due Process Clause of the Fifth Amendment.  Because the Court finds that Plaintiff had no protected property interest, Plaintiff cannot state a claim for relief.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V.  Procedural due process challenges under the Fifth Amendment require the Court to conduct a two-step inquiry.  *See Wilson v. Birnberg*, 667 F.3d 591, 601 (5th Cir. 2012).  First, the federal government must have "deprived a person of a liberty or property interest."  *Id.* (quoting *Welch v. Thompson,* 20 F.3d 636, 639 (5th Cir.1994)).  If the first step is satisfied, the Court must then "determine whether the procedures relative to that deprivation were constitutionally sufficient."  *Wilson*, 667 F.3d at 601.

RE-38

The Supreme Court has emphasized that "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11–12 (1978)).  Furthermore, "[p]roperty interests, of course, are not created by the Constitution.  Rather they are created . . . by existing rules or understandings that stem from an independent source." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Defendants argue that Plaintiff had no property interest in the mistakenly approved Form 1 and, consequently, this Court need not move beyond the first step of the due process inquiry.  Defendants contend that Plaintiff cannot cite an independent source of authority that creates a cognizable property interest in an approved Form 1, and thus Plaintiff has no "legitimate claim of entitlement" to its approval.  *See Roth*, 408 U.S. at 577.

"Applications shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law."  26 U.S.C. § 5822.  Plaintiff, in effect, asks the Court to *approve* his application, despite the fact that doing so would place Plaintiff in violation of law.  As Defendants note, § 922(o)(1) prohibits the possession of machine guns, except, *inter alia*, guns manufactured at the request of a governmental entity.  *See* 18 U.S.C. § 922(o)(2)(A).  The facts of this case do not satisfy this exception, as Plaintiff did not seek approval to manufacture a machine gun on behalf of a governmental entity.  Therefore, ATF could not approve Plaintiff's Form 1 application without violating the GCA and NFA.

Moreover, Plaintiff has no "legitimate claim of entitlement," because he cites no independent authority that creates a property interest in an approved Form 1.  For example, in *Barry v. Barchi*, a New York statute provided that a horse racing trainer's license could be suspended only for certain limited reasons.  *See Barry v. Barchi*¸ 443 U.S. 55, 64–65 (1973).

33

RE-39

Here, in contrast, there is no analogous independent authority that gives Plaintiff a cognizable property interest, such as a license derived from state law.  In fact, the Fifth Circuit has stated that "it is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decisions."  *Macktal v. Chao*, 286 F.3d 822, 825–26 (5th Cir. 2002) (collecting cases).  An "agency, like a court, can undo what is wrongfully done by virtue of its order."  *United Gas Improvement Co. v. Callery Properties*, 382 U.S. 223, 229 (1965).  Here, ATF had the authority to correct the erroneous approval of Plaintiff's Form 1 application, and ATF's decision to exercise that authority did not incidentally grant Plaintiff a cognizable property interest.

Defendants also argue that Plaintiff has no property interest because he voluntarily entered an area subject to pervasive government control.  Defendants rely on *Dennis Melancon, Inc. v. City of New Orleans*, which states that the government's authority to regulate in an area subject to pervasive government control "means an individual 'cannot be said to possess the right to exclude.'"  *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 272 (5th Cir. 2012) (quoting *Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 216 (Fed. Cir. 1993)).  As discussed above, the NFA and GCA delineate such an area of pervasive government control, as demonstrated by the comprehensive scope of federal firearms regulations.  *See Rose*, 522 F.3d at 717–18.  Plaintiff's efforts to comply with these regulations are evidence that he voluntarily subjected himself to them by submitting his Form 1 to make an M-16 machine gun.  *See* Dkt. No. 1 ¶ 37.

Defendants further note that Plaintiff's temporary approval was not accompanied by the "crucial indicia of a property right"—namely, Plaintiff's ability to assign, sell, or transfer the Form 1 approval.  *See Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1330

34

RE-40

(Fed. Cir. 2012); *Gonzalez v. U.S. Dep't of Commerce, Nat'l Oceanic & Atmospheric Admin.*, 695 F. Supp. 2d 474, 504 (S.D. Tex. 2010).  Plaintiff responds that he could have manufactured the machine gun the moment he received approval and, had Defendants not revoked the approval, he *could have* assigned or transferred that machine gun under the NFA.  However, even if Plaintiff did have an interest in the approval, such an interest would not automatically mature into a right to transfer or assign such approval.  *See* 26 U.S.C. § 5822.  Plaintiff's ability to transfer the machine gun would be limited by federal firearms laws requiring the person to whom he transferred the gun to file a separate written application for approval.  *Id.*  Because Plaintiff could only transfer the machine gun with governmental approval, he does not possess the ability to "freely transfer" or assign the Form 1 approval, and he therefore lacks a cognizable property interest in it.  *See Acceptance Ins. Companies, Inc. v. United States*, 583 F.3d 849, 857 (Fed. Cir. 2009) (finding that a plaintiff who "could not freely transfer the policies at issue" without governmental approval had no protected property interest).

Nor did the mistaken approval lead to "continued possession," which may create a property interest.  *See Hampton Co. Nat. Sur., LLC v. Tunica Cnty., Miss.*, 543 F.3d 221, 225 (5th Cir. 2008) (citing *Bell v. Burson*, 402 U.S. 535, 539 (1971)).  For example, if administrative approval "becomes essential in pursuit of a livelihood," an applicant may receive procedural due process protection.  *Bell*, 402 U.S. at 539.  However, Plaintiff does not allege that he intended to use the authorization for the machine gun in pursuit of his livelihood, and even if he had done so, the ATF's prompt rescission of the mistaken approval would preclude any reliance argument.[10]

---

[10] The Supreme Court has recognized that the timing and nature of due process required in each case will be fact-specific and "'will depend on appropriate accommodation of the competing interests involved,'" including the significance of the private interest at stake, the extent of the deprivation, "the likelihood of governmental error," and the importance of the competing government interests.  *Logan*, 455 U.S. at 434 (quoting *Goss v. Lopez*, 419 U.S. 565, 579

RE-41

Because the Court finds that Plaintiff had no property interest in either the machine gun or the erroneous approval of the Form 1 application, the Court does not address the issue of whether the procedures afforded were constitutionally sufficient. *See Hampton Co.*, 543 F.3d at 225 (quoting *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997)) ("When there is no 'property interest, there is nothing subject to Due Process protections and our inquiry ends.'").

## VII.    Equal Protection Component of the Due Process Clause

Finally, Plaintiff contends that Defendants have approved post-1986 Form 1s for various individuals, and ATF's denial of Plaintiff's application violates the equal protection component of the Due Process Clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) (finding an equal protection component under the Fifth Amendment).

A federal statute is "entitled to a 'strong presumption of validity'" unless it (1) infringes upon a fundamental right or (2) "involve[s] suspect classifications." *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)). Absent an infringement of a fundamental right, or the involvement of a suspect classification, this Court will uphold a "legislative classification or distinction" against an equal protection challenge "'so long as it bears some rational relation to a legitimate end.'" *Id.* (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)).

Plaintiff asserts that, "[u]pon information and belief, [ATF] has approved the manufacture and transfer of post-1986 machineguns to various individuals" and, therefore, revoking the approval of Plaintiff's Form 1 application was a denial of equal protection. Dkt.

---

(1975)). Here, Defendants reversed the error within approximately forty-eight hours, concluding that rapid action was necessary "to prevent Plaintiff from mistakenly manufacturing a dangerous and unusual weapon." Dkt. No. 14 at 32 n. 21.

No. 1 ¶¶ 67–68.  Defendants argue that Plaintiff has failed to allege facts that meet the pleading

standard of *Iqbal* and *Twombly*.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555–56 (2007).  The Court finds that Plaintiff's equal protection

claim does not meet the "plausibility" threshold set by Fed. R. Civ. P. 8.

Plaintiff does not allege that he is a member of a suspect class, and his Complaint is

devoid of "factual content that allows the court to draw the reasonable inference that the

defendant[s] [are] liable for the misconduct alleged."  *See Iqbal*, 556 U.S. at 678.  Plaintiff's

Complaint articulates no specific facts about the "various individuals" who allegedly received

post-1986 approval.[11]  *See* Dkt. No. 1 ¶¶ 49, 67.  Plaintiff does argue that the right to own a

machine gun is a fundamental right.  However, as discussed above, "the challenged laws do not

impermissibly interfere with Second Amendment rights."  *See NRA*, 700 F.3d at 212.  Therefore,

because Plaintiff has not shown (1) that he is a member of a suspect class or (2) that his

fundamental right was burdened, a rational-basis standard applies.  In applying the rational-basis

test, this Court will not invalidate the statute at issue "unless the varying treatment of different

groups or persons is so unrelated to the achievement of any combination of legitimate purposes

---

[11] Plaintiff asserts in his response brief that "other individuals have been granted permission . . . to manufacture and possess post-1986 machineguns, namely civilian companies and their employees . . . and various individuals . . . ."  Dkt. No. 23 at 42 (Pl. Resp. Br. at 35).  However, Plaintiff's assertion falls outside of this Court's purview in deciding a 12(b)(6) motion.  *Lone Star Fund V (U.S.) v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the Motion to Dismiss that are central to the claim and referenced by the complaint.").  The same rule applies to Plaintiff's correspondence to the court, which includes a form letter by ATF regarding Form 4 requests for transfer of post-1986 machine guns.  *See* Dkt. No. 37 at 3 (Pl.'s Correspondence to the Court, Ex. A, Stemple Letter Correspondence); *see also* Pl. Sur-Reply Br. at 9 (citing Pl. App. 69).  These documents were not attached to the Complaint, or specifically referenced in the Complaint, nor were they part of Defendants' Motion to Dismiss, and thus are not to be considered by the Court.

that [it] can only conclude that the government's actions were irrational." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83–84 (2000)).

When Congress enacted § 922(o) as part of FOPA, its stated goal was "to strengthen the Gun Control Act of 1968 to enhance the ability of law enforcement to fight violent crime and narcotics trafficking." *Knutson*, 113 F.3d at 31 (quoting H.R. Rep. No. 99–495, at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1327).   Congress found that limiting "the number of machine guns in private hands," including those used for intrastate activity, was necessary to address problems regarding interstate firearms trafficking.  *United States v. Kenney*, 91 F.3d 884, 890–91 (7th Cir. 1996) (citing S. Rep. No. 90–1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2114, 2168).   This Court cannot say that Congress' reasoning was "irrational" in differentiating between machine gun possession by law enforcement and possession by civilians. *See NRA*, 700 F.3d at 212.  Furthermore, regarding the grandfather clause prohibiting possession of a machine gun *after* May 1, 1986, it is well established that Congress "need not strike at all evils at the same time." *Katzenbach v. Morgan*, 384 U.S. 641, 657 (1966) (citations and internal quotation marks omitted) (explaining that a "statute is not invalid under the Constitution because it might have gone farther than it did").  Consequently, Plaintiff has failed to state a plausible claim for relief under the equal protection component of the Fifth Amendment.  Because the Court is granting Defendants' 12(b)(6) Motion to Dismiss, Plaintiff's request for relief under Rule 56(d) is denied as moot.

**VIII.     "Person" under the GCA**

Alternatively, Plaintiff requests a declaratory judgment that 18 U.S.C. § 922(o) does not prohibit unincorporated trusts from manufacturing or possessing machine guns.

Section 922(o) provides that:

(o)(1)  Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to--

(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

18 U.S.C. § 922(o).  Section 921(a)(1) provides that:

(a) As used in this chapter—

(1) The term "person" and the term "whoever" include any individual, corporation, company, association, firm, partnership, society, or joint stock company.

18 U.S.C. § 921(a)(1).  Accordingly, the issue before the Court is whether the Hollis Trust is a "person" under the the GCA.  Hollis relies on the plain language of the GCA, which, unlike the definition of "person" in the Internal Revenue Code that applies to the NFA, does not include "trust" as a "person."

The Hollis Trust was created and exists under the laws of the State of Texas.  Dkt. No. 1 ¶ 4.  "The general rule in Texas (and elsewhere) has long been that 'the term 'trust' refers not to a separate legal entity but rather to the *fiduciary relationship* governing the trustee with respect to the trust property.'"  *In re Guetersloh*, 326 S.W.3d 737, 739 (Tex. App.—Amarillo 2010, no pet.) (quoting *Huie v. DeShazo*, 922 S.W.2d 920, 926 (Tex. 1996) (emphasis in original)); *see also Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009) ("A trust is not a legal entity.").  For example, "suits against a trust must be brought against the trustee."  *Id.* (citing *Werner v. Colwell*, 909 S.W.2d 866, 870 (Tex. 1995)).

However, and importantly for the purposes of the Hollis Trust, "[t]he trustee is vested with legal title and right of possession of the trust property but holds it for the benefit of the

RE-45

beneficiaries, who are vested with equitable title to the trust property." *Faulkner v. Bost*, 137 S.W.3d 254, 258–59 (Tex. App.—Tyler 2004, no pet.).  Accordingly, as the trustee of the Hollis Trust, only Hollis could "transfer or possess a machinegun," as is prohibited under § 922(o).  As an individual human being, Hollis is a "person" within the meaning of § 922(a)(1), and he is subject to the prohibitions of § 922(o), which prevent him from possessing or transferring a machine gun.  *See United States v. King*, 735 F.3d 1098, 1104 (9th Cir. 2013) ("King, as an individual human being, is therefore a 'person' within the meaning of § 922(a)(1)(A).").  Accordingly, the Court finds that 18 U.S.C. § 922(o) prohibited Hollis, individually, and as trustee of the Hollis Trust, from possessing a machine gun, and Plaintiff's alternative request for declaratory and injunctive relief to the contrary is dismissed for failure to state a claim.

## CONCLUSION

For the reasons stated, the Defendants' 12(b)(1) Motion to Dismiss Plaintiff's Second Amendment ("Count I") and Commerce Clause ("Count II") claims for lack of standing is **GRANTED**, and those claims are **DISMISSED**.  Defendants' 12(b)(6) Motion to Dismiss Plaintiff's due process ("Count III"), equal protection ("Count IV"), and Plaintiff's alternative request for declaratory relief that § 922(o) does not apply to Plaintiff or the Hollis Trust (Dkt. No. 1 ¶ 3) is **GRANTED**, and those claims are **DISMISSED with prejudice**.  Plaintiff's Motion for Discovery under Fed. R. Civ. P. 56(d) is **DENIED as moot**.  The Court will enter a separate judgment dismissing Plaintiff's claims.

**SO ORDERED.**

August 7, 2015.

RE-46

TAB 3

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JAY AUBREY ISAAC HOLLIS, individually and as Trustee of the JAY AUBREY ISAAC HOLLIS REVOCABLE LIVING TRUST, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:14-cv-03872-M |
| LORETTA E. LYNCH, Attorney General of the United States, and THOMAS E. BRANDON, Director, Bureau of Alcohol, Tobacco, Firearms & Explosives, | § § § § § | |
| Defendants. | § § | |

## <u>JUDGMENT</u>

In accordance with the Court's Memorandum Opinion Order granting Defendants'

Motion to Dismiss [Docket No. 45], since no further issues are pending before this Court, it is

**ORDERED, ADJUDGED,** and **DECREED** that Plaintiff shall take nothing on his claims

against Defendants. All court costs are taxed against the Plaintiff.

**SO ORDERED**.

August 7, 2015.

RE-47

TAB 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JAY AUBREY ISAAC HOLLIS<br>    Individually and as Trustee of the<br>    JAY AUBREY ISAAC HOLLIS<br>    REVOCABLE LIVING TRUST,<br><br>    Plaintiff,<br><br>            v.<br><br>LORETTA LYNCH., Attorney General of<br>    the United States; THOMAS E. BRANDON,<br>    Acting Director of the Bureau of Alcohol<br>    Tobacco Firearm and Explosives,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.3:14-cv-03872-M

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Plaintiff Jay Aubrey Isaac Hollis, Individually and as

Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust, hereby appeals to the United States

Court of Appeals for the Fifth Circuit from the Court's Memorandum Opinion and Order and

Judgement entered on August 7, 2015  [ECF Nos. 45 & 47]

Respectfully submitted,

This, the __18th__ day of August, 2015.


_/s/ Stephen D. Stamboulieh___
STEPHEN D. STAMBOULIEH
ATTORNEY FOR PLAINTIFF

**Of Counsel:**

RE-48

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784

Alan Alexander Beck
Law Office of Alan Beck
4780 Governor Drive
San Diego, CA  92122
(619) 971-0414
alan.alexander.beck@gmail.com
CA Bar No. 276646
Admitted Pro Hac Vice

Elisha M. Hollis
Attorney At Law
P.O. Box 1535
Greenville, TX  75403
Tel:    (903) 450-2473
Fax:    (903) 200-1290
elishahollis@gmail.com
TX Bar No. 24083189

RE-49

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen D. Stamboulieh, hereby certify that I electronically submitted the foregoing document with the clerk of the court for the United States District Court, Northern District of Texas, Dallas Division, utilizing the electronic case filing system of the court, which sent a copy of the filing to all counsel of record.

**/s/   Stephen D. Stamboulieh**
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784

RE-50

# CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2015, a true and correct copy of the foregoing Record Excerpts were served via electronic filing with the Clerk of Court and all registered ECF users.

Patrick G. Nemeroff
Email: patrick.g.nemeroff@usdoj.gov
U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
(202) 305-8727

Daniel M. Riess
U.S. Department of Justice
Civil Division Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20530
(202) 514-1259

Dated: October 26, 2015

/s/Stephen D. Stamboulieh