IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

JAY AUBREY ISAAC HOLLIS, Individually and as Trustee of
the Jay Aubrey Isaac Hollis Revocable Living Trust,

Plaintiff-Appellant,

v.

LORETTA E. LYNCH, Attorney General of the United States; THOMAS E. BRANDON, Acting
Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives

Defendants-Appellees.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

———————————————

BRIEF FOR APPELLEES

———————————————

BENJAMIN C. MIZER
*Principal Deputy Assistant
Attorney General*

JOHN R. PARKER
*United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
PATRICK G. NEMEROFF
*(202) 305-8727
Attorneys, Appellate Staff
Civil Division, Room 7217
Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530*

## STATEMENT REGARDING ORAL ARGUMENT

The government believes that oral argument would be appropriate in this case, and stands ready to present argument if it would assist the Court in its deliberations.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................................1

STATEMENT OF THE ISSUE ...................................................................2

PERTINENT STATUTORY PROVISIONS...................................................2

STATEMENT OF THE CASE....................................................................2

    A.  Statutory and Regulatory Background ...............................................2

    B.  Factual and Procedural Background...................................................5

SUMMARY OF ARGUMENT....................................................................9

STANDARD OF REVIEW .......................................................................11

ARGUMENT ........................................................................................12

    I.     The District Court Correctly Dismissed Plaintiff's Second
           Amendment Challenge.........................................................12

           A.     Plaintiff Lacks Standing Because Texas Law Independently
                  Prohibits Him from Possessing a Machine Gun...........................12

           B.     The Second Amendment Right Does Not Extend to
                  Possession of Machine Guns ..............................................14

           C.     Federal Law Permissibly Regulates the Private Possession
                  of Machine Guns.............................................................23

     II.    Plaintiff's Remaining Claims Are Waived and, in Any Event,
           Lack Merit .....................................................................29

     III.   Plaintiff Has Not Identified Any Procedural Error by the
           District Court...................................................................33

CONCLUSION ....................................................................................36

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page(s):**

*Board of Regents of State Colleges v. Roth*,
    408 U.S. 564 (1972)..................................................................................................32

*Crane v. Johnson*,
    783 F.3d 244 (5th Cir. 2015)...............................................................................11

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)......................................................7, 9, 10, 14, 15, 19, 20, 21, 24, 27

*Drake v. Filko*,
    724 F.3d 426 (3d Cir. 2013)................................................................................25

*Friedman v. City of Highland Park*,
    784 F.3d 406 (7th Cir. 2015), *cert. denied,*
    No. 15-133, 2015 WL 4555141 (Dec. 7, 2015).......................................... 15, 28

*Hamblen v. United States*,
    591 F.3d 471 (6th Cir. 2009)...............................................................................15

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011)..........................................................................15

*Herrod v. Potter*,
    255 F. App'x 894 (5th Cir. 2007)........................................................................29

*In re FEMA Trailer Formaldahyde Prods. Liab. Litig.*,
    628 F.3d 157 (5th Cir. 2010)......................................................................... 11, 35

*In re Guetersloh*,
    326 S.W. 3d 737 (Tex. App. 2010) .....................................................................33

*Kachalsky v. County of Westchester*,
    701 F.3d 81 (2d Cir. 2012)..................................................................................25

*Macktal v. Chao*,
    286 F.3d 822 (5th Cir. 2002)...............................................................................32

iii

*Mance v. Holder,*
    74 F. Supp. 3d 795 (N.D. Tex. 2015) ..............................................................13

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010) ..............................................................14

*Mississippi State Democratic Party v. Barbour,*
    529 F.3d 538 (5th Cir. 2008) ..............................................................12

*Morrison v. State,*
    170 Tex. Crim. 218 (1960) ..............................................................16

*National Fed'n of Indep. Business v. Sebelius,*
    132 S. Ct. 2566 (2012) ..............................................................31

*New York State Rifle and Pistol Assoc. v. Cuomo,*
    804 F.3d 242 (2d Cir. 2015) ..............................................................15, 24

*NRA v. ATF,*
    700 F.3d 185 (5th Cir. 2012) ..............................................................18, 22, 23, 24, 25

*Olympic Arms v. Buckles,*
    301 F.3d 384 (6th Cir. 2002) ..............................................................31

*Raby v. Livingston,*
    600 F.3d 552 (5th Cir. 2010) ..............................................................11, 34

*Rinzler v. Carson,*
    262 So. 2d 661 (Fla. 1972) ..............................................................28

*Schrader v. Holder,*
    704 F.3d 980 (D.C. Cir. 2013) ..............................................................25

*Spotts v. United States,*
    613 F.3d 559 (5th Cir. 2010) ..............................................................11

*State v. Langford,*
    10 N.C. 381 (1824) ..............................................................22

*Turner Broad. Sys. v. FCC,*
    520 U.S. 180 (1997) ..............................................................28

*Tyler v. Hillsdale Cty. Sheriff's Dep't,*
  775 F.3d 308 (6th Cir. 2014), *pet. for reh'g en banc granted,*
  No. 13-1876 (Apr. 21, 2015) ...........................................................25

*United Gas Improvement Co. v. Callery Props.,*
  382 U.S. 223 (1965) .....................................................................32

*United States v. Allen,*
  630 F.3d 762 (8th Cir. 2011) .........................................................15

*United States v. Cervantes,*
  706 F.3d 603 (5th Cir. 2013) .........................................................29

*United States v. Chovan,*
  735 F.3d 1127 (9th Cir. 2013) .......................................................25

*United States v. Dunn,*
  946 F.2d 615 (9th Cir. 1991) ...........................................................3

*United States v. Fincher,*
  538 F.3d 868 (8th Cir. 2008), *cert. denied,*
  555 U.S. 1174 (2009) ...............................................................15, 16

*United States v. Golding,*
  332 F.3d 838 (5th Cir. 2004) .....................................................16, 27

*United States v. Henry,*
  688 F.3d 637 (9th Cir. 2012) .......................................10, 15, 16, 17, 31

*United States v. Jennings,*
  195 F.3d 795 (5th Cir. 1999) .....................................................17, 26

*United States v. Kirk,*
  105 F.3d 997 (5th Cir. 1997) ..................................8, 16, 17, 27, 28, 31

*United States v. Knutson,*
  113 F.3d 27 (5th Cir. 1997) .........................................................8, 31

*United States v. Mahin,*
  668 F.3d 119 (4th Cir. 2012) .........................................................25

*United States v. Marzzarella,*
614 F.3d 85 (3d Cir. 2010), *cert. denied,*
562 U.S. 1158 (2011).............................................15, 22, 23, 24, 25

*United States v. McCartney,*
357 F. App'x 73 (9th Cir. 2009) ............................................16

*United States v. Miller,*
307 U.S. 174 (1939)...........................................................14, 19

*United States v. O'Brien,*
560 U.S. 218 (2010)....................................................................27

*United States v. Serna,*
309 F.3d 859 (5th Cir. 2002)..................................................26

*United States v. Williams,*
616 F.3d 685 (7th Cir. 2010)..................................................25

*Warren v. Chesapeake Exploration, LLC,*
759 F.3d 413 (5th Cir. 2014)..................................................30

*White v. United States,*
601 F.3d 545 (6th Cir. 2010)..................................................12

*Wilson v. Birnberg,*
667 F.3d 591 (5th Cir. 2012)..................................................32

*Woollard v. Gallagher,*
712 F.3d 865 (4th Cir. 2013)..................................................25

## Statutes:

Firearms Owners' Protection Act of 1986,
Pub. L. No. 99-308, 100 Stat. 449 .........................................4

Omnibus Crime Control and Safe Streets Act of 1968,
Pub. L. No. 90-351, tit. IV, 82 Stat. 197................................4

18 U.S.C. § 921(a)(23) ................................................................4

18 U.S.C. § 922(a)(1) ............................................................. 5

18 U.S.C. § 922(g)(1) ............................................................ 33

18 U.S.C. § 922(g)(4) ............................................................ 25

18 U.S.C. § 922(o) .................................................... 2, 4, 5, 7, 31

18 U.S.C. § 922(o)(1) ............................................................. 2

18 U.S.C. § 922(o)(2) ............................................................. 2

26 U.S.C. § 5822 ........................................................... 2, 3, 32

26 U.S.C. § 5841 ............................................................... 2, 3

26 U.S.C. § 5845(b) .............................................................. 3

28 U.S.C. § 1291 ................................................................. 1

28 U.S.C. § 1331 ................................................................. 1

28 U.S.C. § 1343 ................................................................. 1

28 U.S.C. § 1346 ................................................................. 1

28 U.S.C. § 2201 ................................................................. 1

28 U.S.C. § 2202 ................................................................. 1

1881 Ark. Acts 191 ............................................................. 18

1931 Ark. Acts 705 ............................................................ 17

1927 Cal. Stat. 938 ............................................................ 17

37 Del. Laws 813 (1931) ....................................................... 17

1837 Ga. Laws 90 .............................................................. 18

1881 Ill. Laws 73..................................................................18

1931 Ill. Laws 452................................................................17

1927 Ind. Acts 469...............................................................17

1927 Iowa Acts 201..............................................................17

1933 Kan. Sess. Laws 76........................................................17

1932 La. Acts 337................................................................17

1927 Mich. Pub. Acts 888......................................................17

1929 Mich. Pub. Acts 529......................................................18

1933 Minn. Laws 231............................................................17

1929 Mo. Laws 170..............................................................17

1929 Neb. Laws 674.............................................................17

1889 N.Y. Laws 167.............................................................18

1931 N.Y. Laws 2389...........................................................17

1931 N.D. Laws 305-06.........................................................17

1929 Pa. Laws 777...............................................................17

1927 R.I. Acts & Resolves 256................................................17

1934 S.C. Acts 1288-89.........................................................17

1837-1838 Tenn. Pub. Acts 200, ch. 137...................................18

1879 Tenn. Pub. Acts 135......................................................18

1933 Tex. Gen. Laws 219.......................................................17

Tex. Penal Code:
  § 46.05(a)(1)..........................................................................13
  § 46.05(a)(1)(B) ...................................................................12
  § 46.05(a)(2)............................................................................7

1933 Wash. Sess. Laws 335 .............................................................17

1929 Wis. Sess. Laws 157 ................................................................17

## Regulation:

27 C.F.R. § 479.65 ...........................................................................2

## Rules:

Fed. R. App. P.:
  4(a)(1)(B) ................................................................................1
  32(a)(7)(C) .............................................................................37

Fed. R. Civ. P.:
  12(b)(1)........................................................................10, 11, 34
  12(b)(6) ...........................................................................11, 34
  56(d) .........................................................................10, 11, 34

## Legislative Materials:

132 Cong. Rec. 9,602 (1986) ...........................................................5

H.R. Rep. No. 83-1337 (1954)...............................................2, 3, 26

H.R. Rep. No. 99-495, *reprinted in* 1986 U.S.C.C.A.N. 1327 (1986)............................ 4, 5

S. Rep. No. 88-1340 (1964) ...............................................................3

S. Rep. No. 90-1501 (1968) .............................................................26

**Other Authorities:**

4 William Blackstone, *Commentaries on the Laws of England* (1769) ....................................10

William Rosenau, Book Note, *The Social History of the Machine Gun*,
   90 Tech. Rev. 74 (Jan. 1987) ..............................................................................................17

Eugene Volokh:
   *State Constitutional Rights to Keep and Bear Arms*,
     11 Tex. Rev. L. & Pol. 191 (2006) ..............................................................................17
   *Implementing the Right to Keep and Bear Arms for Self-Defense*,
     56 UCLA L. Rev. 1443 (2009) ....................................................................................27

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 15-10803

———————————————

JAY AUBREY ISAAC HOLLIS, Individually and as Trustee of
the Jay Aubrey Isaac Hollis Revocable Living Trust,

Plaintiff-Appellant,

v.

LORETTA E. LYNCH, Attorney General of the United States, et al.,

Defendants-Appellees.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

———————————————

BRIEF FOR APPELLEES

———————————————

## STATEMENT OF JURISDICTION

Plaintiff invoked the jurisdiction of the district court under 28 U.S.C. §§ 1331, 1343, 1346, 2201, and 2202. The district court granted the United States' motion to dismiss and entered final judgment on August 7, 2015. ROA.788. Plaintiff filed a timely notice of appeal on August 18, 2015. ROA.829; *see* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly dismissed plaintiff's challenge to federal restrictions under the National Firearms Act and section 922(o) of the Gun Control Act on the manufacture and possession of machine guns.

## PERTINENT STATUTORY PROVISIONS

Pertinent statutory provisions are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.  Statutory and Regulatory Background

Federal law generally prohibits the private manufacture and possession of machine guns.  The National Firearms Act, 26 U.S.C. chapter 53, requires approval from the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) before manufacture of a machine gun, 26 U.S.C. § 5841, and provides that no application shall be approved if the making or possession of the machine gun "would place the person making the firearm in violation of law," *see* 26 U.S.C. § 5822; 27 C.F.R. § 479.65.  The Gun Control Act, in turn, makes it "unlawful for any person to transfer or possess a machinegun," with exceptions related to federal and state government entities and firearms lawfully possessed before 1986.  *See* 18 U.S.C. § 922(o)(1), (2).

Congress enacted the National Firearms Act of 1934 to target "lethal weapons . . . [that] could be used readily and efficiently by criminals or gangsters."  H.R. Rep.

No. 83-1337, at 4542 (1954).  The Act does not apply to all guns, but only to "firearms," which are defined to include machine guns, short-barreled shotguns, and other specified weapons that Congress has deemed "inherently dangerous and generally lacking usefulness, except for violent and criminal purposes."  *United States v. Dunn*, 946 F.2d 615, 621 (9th Cir. 1991).  The Act defines a machine gun as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger," or various parts thereof (including "any combination of parts from which a machinegun can be assembled").  26 U.S.C. § 5845(b).  The Act provides for the creation of a "central registry of all firearms in the United States," in which each firearm manufactured or imported must be registered.  26 U.S.C. § 5841.  Before a machine gun or other firearm may be made, the maker must: (1) file "a written application . . . to make and register the firearm"; (2) pay "any tax payable"; (3) "identif[y] the firearm to be made"; (4) "identif[y] himself in the application form"; and (5) obtain the approval of ATF "to make and register the firearm" with "the application form show[ing] such approval."  *Id.* § 5822.

Congress enacted the Gun Control Act in 1968, following a multi-year inquiry that included "field investigation and public hearings," S. Rep. No. 88-1340, at 1 (1964), during which Congress found "that the ease with which" guns could be

acquired by "criminals . . . and others whose possession of such weapons is similarly

contrary to the public interest[] is a significant factor in the prevalence of lawlessness

and violent crime in the United States," Omnibus Crime Control and Safe Streets Act

of 1968, Pub. L. No. 90-351, Title IV, § 901(a)(2), 82 Stat. 197, 225.  Congress

concluded "that there is a widespread traffic in firearms moving in or otherwise

affecting interstate or foreign commerce, and that the existing Federal controls over

such traffic do not adequately enable the States to control this traffic within their own

borders through the exercise of their police power." *Id.* § 901(a)(1), 82 Stat. at 225.

Congress determined "that only through adequate Federal control over interstate and

foreign commerce in these weapons . . . can this grave problem be properly dealt with,

and effective State and local regulation of this traffic be made possible." *Id.*

§ 901(a)(3), 82 Stat. at 225.

In 1986, Congress enacted amendments "to strengthen the [Gun Control Act]

to enhance the ability of law enforcement to fight violent crime and narcotics

trafficking," H.R. Rep. No. 99-495, at 1, *reprinted in* 1986 U.S.C.C.A.N. 1327 (1986); *see*

Firearms Owners' Protection Act of 1986, Pub. L. No. 99-308, 100 Stat. 449.  Among

other changes, Congress added 18 U.S.C. § 922(o) to generally prohibit private

possession of machine guns. [1]  In so doing, Congress recognized "the need for more

---

[1] The Gun Control Act defines the term "machinegun" by incorporating the National
Firearms Act's definition of the term.  *See* 18 U.S.C. § 921(a)(23).

effective protection of law enforcement officers from the proliferation of machine guns," H.R. Rep. No. 99-495, at 7, 1986 U.S.C.C.A.N. at 1328, 1333 (describing proposed machine gun restrictions as "benefits for law enforcement"); *id.* at 4, 1986 U.S.C.C.A.N. at 1330 (describing machine guns as "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime"); *see also* 132 Cong. Rec. 9,602 (1986) (statement of Sen. Kennedy) ("The only thing that has changed about the machinegun situation since the 1968 act . . . is that machine guns have become a far more serious law enforcement problem.").

## B.  Factual and Procedural Background

1.  Plaintiff Jay Aubrey Hollis, on behalf of the Jay Aubrey Isaac Hollis Revocable Living Trust, submitted an application to ATF to manufacture an M-16 style machine gun.  ROA.27-29.  In his application, plaintiff did not claim to fall within one of the two exceptions to the prohibition on possession of machine guns set forth in 18 U.S.C. § 922(o).  Instead, he argued that his application was on behalf of his unincorporated trust, and that a trust is not a "person" for purposes of the Gun Control Act, 18 U.S.C. § 921(a)(1), and therefore not subject to section 922(o). ROA.27.

Two days after mistakenly informing plaintiff that his application had been approved, ROA.30-31, ATF informed plaintiff that his application was disapproved,

ROA.32-33. In a subsequent letter hand-delivered by an ATF Special Agent to plaintiff, ATF explained "that the approval was in error," because "ATF may not approve any private person's application to make and register a machinegun after May 19, 1986." ROA.34. ATF further explained that "[t]he fact that an unincorporated trust is not included in the definition of 'person' under the [Gun Control Act] does not mean that an individual may avoid liability under section 922(o) by placing a machinegun 'in trust.'" ROA.34-35. Rather, because "a trust is not an entity recognized as a 'person' under the applicable law, it cannot make or hold property and is disregarded." ROA.35. The letter explained that ATF "consider[s] the individual acting on behalf of the trust to be the proposed maker/possessor of the machinegun." *Id.* ATF informed plaintiff that his "continued possession of [a machine gun] without a valid registration therefore violates the [National Firearms Act]," and requested that plaintiff "abandon [any such machine gun] to the ATF Special Agent who is delivering this letter to you." ROA.34.

2. Plaintiff filed this lawsuit in the Northern District of Texas, seeking declaratory and injunctive relief finding "the ban on machine guns unconstitutional under the Second, Ninth and Tenth Amendments and in violation of Article I of the United States Constitution and . . . prohibiting Defendants from unjustly taking property without Due Process." ROA.9. In the alternative, plaintiff sought

6

"declaratory and injunctive relief finding that 18 U.S.C. § 922(o) does not prohibit an unincorporated trust from manufacturing or possessing a machinegun." *Id.*; *see* ROA.20-24.

The district court granted the government's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim. ROA.788-828. The court held that plaintiff lacked standing to assert his Second Amendment and Commerce Clause challenges because a judgment in this suit would not redress his asserted injury. The court explained that regardless of the outcome of a suit against the federal government, Texas state law independently makes it a crime to "intentionally or knowingly possess[], manufacture[], transport[], repair[], or sell . . . a machine gun." ROA.802-08 (quoting Tex. Penal Code § 46.05(a)(2)).

In the alternative, the court held that plaintiff failed to state a claim under the Second Amendment, because "possessing a machine gun . . . does not fall within the scope of the Second Amendment." ROA.813. The court noted that, in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), the Supreme Court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms." *Id.* The district court further emphasized "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" ROA.809-10 (quoting *Heller*, 554 U.S. at 626-27 (emphasis omitted)). The court noted

that "*Heller* recognized that the right to keep and . . . bear arms only extends to those arms in common use at the time . . . [and] does not include a right to possess a specific firearm or type of firearm," and that "the Supreme Court clearly found startling the prospect that the machine gun ban would have been unconstitutional." ROA.813-14.  The district court observed that "[e]very federal circuit that has addressed the issue has held that there is no Second Amendment right to possess a machine gun."  ROA.814.  The court therefore concluded that "*Heller* expressly forecloses Plaintiff's Second Amendment challenge to the [National Firearms Act] and [Gun Control Act]'s prohibition on the possession of a machine gun."  ROA.815.

The district court held that plaintiff's Commerce Clause challenge was similarly precluded by "well-established precedent," because "the manufacturing, possession, and trafficking of machine guns does substantially affect interstate commerce, and . . . Congress was well within its Commerce Clause authority in enacting § 922(o)." ROA.815-16 (citing *United States v. Kirk*, 105 F.3d 997, 998 (5th Cir. 1997) (en banc); *United States v. Knutson*, 113 F.3d 27, 30-31 (5th Cir. 1997) (per curiam)).

The district court also held that plaintiff had failed to state a claim with respect to his other causes of action.  Plaintiff's due process claim failed because he "had no property interest in either the machine gun or the erroneous approval of" his application, ROA.823, particularly because "ATF could not approve Plaintiff's . . .

8

application without violating the [Gun Control Act] and [the National Firearms Act]," ROA.820. Plaintiff's equal protection claim failed because plaintiff "has not shown (1) that he is a member of a suspect class or (2) that his fundamental right was burdened," ROA.824.

Rejecting plaintiff's statutory argument, the court held that Hollis could not evade section 922(o) by applying for a machine gun on behalf of his unincorporated trust. ROA.825-27. The court explained that "as the trustee of the Hollis Trust, only Hollis could 'transfer or possess a machinegun,'" and "Hollis is a 'person' within the meaning of § 922(a)(1), and he is subject to the prohibitions of § 922(o)." ROA.827.

## SUMMARY OF ARGUMENT

The district court correctly concluded, as a threshold matter, that plaintiff cannot satisfy the Article III standing requirement of redressability, because he likely would be barred from possessing a machine gun by Texas law even if he prevailed in this action.

The court correctly held, in the alternative, that plaintiff's Second Amendment claims is foreclosed by the Supreme Court's analysis in *District of Columbia v. Heller*, 554 U.S. 570, 624 (2008), which expressly rejected an interpretation of the Second Amendment that "would mean that the National Firearms Act's restrictions on machineguns . . . might be unconstitutional." The Supreme Court recognized that

one "important limitation on the right to keep and carry arms" is that "the sorts of weapons protected were those in common use at the time," *id.* at 627 (internal quotation marks omitted), emphasizing that this "limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" *id.* at 627 (quoting 4 William Blackstone, Commentaries on the Laws of England 148-49 (1769)). Accordingly, every court of appeals to address the issue has held that the Second Amendment right does not extend to the possession of machine guns. *See, e.g., United States v. Henry*, 688 F.3d 637, 639-40 (9th Cir. 2012) (collecting cases).

Plaintiff nevertheless contends that the Second Amendment extends to the possession of a machine gun on the ground that these weapons are useful in military service. The Supreme Court reached the opposite conclusion in *Heller*, and, in any event, even if possession of machine guns fell within the ambit of the Second Amendment, the prohibition would be sustained because it furthers Congress's compelling interest in protecting the public safety.

Plaintiff has not raised his other constitutional and statutory claims on appeal, and they are thus waived. He mistakenly urges, however, that the district court was required to allow plaintiff supplemental discovery pursuant to Federal Rule of Civil Procedure 56(d) before ruling on the government's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). And the district court did not

abuse its discretion by dismissing plaintiff's claim with prejudice when plaintiff never sought leave to amend his claim, particularly because any such amendment would be futile in light of the fact that plaintiff's claims all fail on the merits.

## STANDARD OF REVIEW

This court reviews de novo a district court's order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See Crane v. Johnson*, 783 F.3d 244, 250-51 (5th Cir. 2015). It also reviews de novo a district court's order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Spotts v. United States*, 613 F.3d 559, 565-66 (5th Cir. 2010).

This Court reviews for abuse of discretion the district court's denial of a motion for additional discovery pursuant to Federal Rule of Civil Procedure 56(d), *see Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (discussing standard for then-Rule 56(f)), and the district court's decision to dismiss with prejudice, *see In re FEMA Trailer Formaldahyde Prods. Liab. Litig.*, 628 F.3d 157, 161 (5th Cir. 2010).

# ARGUMENT

## I. The District Court Correctly Dismissed Plaintiff's Second Amendment Challenge.

### A. Plaintiff Lacks Standing Because Texas Law Independently Prohibits Him from Possessing a Machine Gun.

To establish standing, a plaintiff must demonstrate "a concrete and particularized injury-in-fact" that "is fairly traceable to the defendant's conduct" and "is likely to [be] redress[ed]" by "a favorable judgment." *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008).

The district court correctly concluded that plaintiff lacks Article III standing because no relief that could be granted in this suit would permit plaintiff to manufacture a machine gun. The court explained that Texas, which is not a party to this suit, independently makes it a crime to "intentionally or knowingly possess[], manufacture[], transport[], repair[], or sell . . . a machine gun." Tex. Penal Code § 46.05(a)(1)(B). Regardless of the outcome in this suit, therefore, plaintiff's asserted injury would not be redressed. *See White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010) (holding that plaintiff could not satisfy Article III standing to challenge federal cockfighting ban where state law independently banned the same conduct).

Plaintiff argues that his claim is nonetheless redressable because a safe harbor provision in Texas law would permit him to possess a machine gun if the federal

regulation of machine guns were deemed unconstitutional. *See* Pl. Br. 18. That safe

harbor provision, however, extends only to items "registered in the National Firearms

Registration and Transfer Record maintained by" ATF, Tex. Penal Code § 46.05(a)(1),

and its operation depends on federal law. The district court concluded, therefore, that

striking down federal firearms laws might cause the "safe harbor provision to simply

'fall away.'" ROA.806. If ATF no longer registered machine guns pursuant to federal

law, machine guns could not qualify for the safe harbor provision and would remain

prohibited under Texas law.[2]

    While plaintiff claims that striking down federal regulation of machine guns on

Second Amendment grounds would necessarily render the Texas law invalid, Pl. Br.

17-18, the district court explained that "the validity of state and local regulation turns

on the particular provision at issue." ROA.807. And plaintiff finds no support in

*Mance v. Holder*, 74 F. Supp. 3d 795 (N.D. Tex. 2015), which did not involve a state

law that independently prohibited the relevant conduct.

    In any event, even if plaintiff could establish Article III standing, his Second

Amendment claim would fail on the merits for the reasons set forth below.

---

[2] Plaintiff suggests that his injury might be redressed by an order holding section
922(o) unconstitutional but upholding the National Firearms Act as constitutional,
because such an order might permit Texas's safe harbor provision to remain
operative. *See* Pl. Br. 19-20. But plaintiff did not request such tailored relief in his
complaint, ROA.23-24, and, in any event, it is by no means clear that Texas would
maintain its safe harbor provision even in such a scenario.

**B. The Second Amendment Right Does Not Extend to Possession of Machine Guns.**

1. The Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), explained that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." The Court recognized that one "important limitation of the right to keep and carry arms" is that "the sorts of weapons protected were those in common use at the time," *id.* (quotation marks omitted). It concluded that this "limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627 (quoting 4 Blackstone 148-49 (1769)). The Court "repeat[ed] those assurances" in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion), observing that "the right to keep and bear arms is not 'a right to keep and carry *any weapon whatsoever* in any manner whatsoever and for whatever purpose,'" *id.* (quoting *Heller*, 554 U.S. at 626) (emphasis added). The Court did not canvass in detail every weapon that falls outside of the Second Amendment's scope, but it explicitly rejected an interpretation of the Second Amendment that "would mean that the National Firearms Act's restrictions on machineguns . . . might be unconstitutional." *Heller*, 554 U.S. at 624. The Court explained that the exclusion of "dangerous and unusual weapons" from the Second Amendment right was consistent with its decision in *United States v. Miller*, 307 U.S. 174 (1939), which rejected a challenge to an indictment for unlawful transportation of a short barreled shotgun,

because "the *type of weapon at issue* was not eligible for Second Amendment protection."
*Heller*, 554 U.S. at 622.

Applying *Heller*, every court of appeals to address the issue has held that there is no Second Amendment right to possess a machine gun. *See United States v. Henry*, 688 F.3d 637, 639-40 (9th Cir. 2012); *United States v. Allen*, 630 F.3d 762, 766 (8th Cir. 2011); *United States v. Marzzarella*, 614 F.3d 85, 94-95 (3d Cir. 2010), *cert. denied*, 562 U.S. 1158 (2011); *Hamblen v. United States*, 591 F.3d 471, 472, 474 (6th Cir. 2009); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008), *cert. denied*, 555 U.S. 1174 (2009); *see also New York State Rifle and Pistol Assoc. v. Cuomo*, 804 F.3d 242, 256 (2d Cir. 2015) (noting that "*Heller* expressly highlighted weapons that are most useful in military service, such as the fully automatic M-16 rifle, as weapons that could be banned without implicating the Second Amendment" (internal quotation marks omitted)); *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) (observing that "military-grade weapons (the sort that would be in a militia's armory), such as machine guns, and weapons especially attractive to criminals, such as short-barreled shotguns, are not" protected by the Second Amendment), *cert. denied*, No. 15-133, 2015 WL 4555141 (Dec. 7, 2015); *Heller v. District of Columbia*, 670 F.3d 1244, 1270 (D.C. Cir. 2011) ("[F]ully automatic weapons, also known as machine guns, have traditionally been banned and may continue to be banned after *Heller*.").

As the Eighth Circuit observed, machine guns are "not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use." *Fincher*, 538 F.3d at 874; *see also United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009) ("[T]he possession of a machine gun by a private citizen is quite unusual in the United States"); *Morrison v. State*, 170 Tex. Crim. 218, 221 (1960) ("A machine gun is not a weapon commonly kept, according to the customs of the people and appropriate for open and manly use in self defense."). Indeed, "[s]hort of bombs, missiles, and biochemical agents, . . . few weapons . . . are more dangerous than machine guns," which "are 'dangerous and unusual weapons' . . . not protected by the Second Amendment," *Henry*, 688 F.3d at 640.

This Court has not previously considered a post-*Heller* Second Amendment challenge to the regulation of machine guns, but it has likewise recognized the "inherently dangerous nature of machine guns," *United States v. Golding*, 332 F.3d 838, 840 (5th Cir. 2004), describing them as "very different weapons from guns without the capability of automatic fire," *United States v. Kirk*, 105 F.3d 997, 1003 (5th Cir. 1997) (Higginbotham, J., concurring). This Court has explained that Congress regulated machine guns based on its "specific declaration and finding that . . . machine guns . . . are primarily weapons of war and have no appropriate sporting use or use for

personal protection." *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999) (quoting S. Rep. No. 90-1501, at 28 (1968)). "The destructive capacity of machine guns puts them in the same category as explosives, which the federal government has heavily regulated for over twenty-five years, except machine guns have little lawful use." *Kirk*, 105 F.3d at 1001 (Higginbotham, J., concurring).

The historical record leaves no doubt as to the correctness of the uniform holdings that the Second Amendment right does not extend to the possession of machine guns. "The machine gun was first widely used during World War I, where it 'demonstrated its murderously effective firepower over and over again.'" *Henry*, 688 F.3d at 640 (quoting William Rosenau, Book Note, *The Social History of the Machine Gun*, 90 Tech. Rev. 74 (Jan. 1987)). By 1934, when Congress passed the National Firearms Act, at least twenty-one states had adopted legislation generally prohibiting the private possession of machine guns.[3] Nine of those states enacted such laws against the backdrop of state constitutions that included Second Amendment analogues. *See* Eugene Volokh, *State Constitutional Rights to Keep and Bear Arms*, 11 Tex. Rev. L. & Pol. 191 (2006).

---

[3] *See* 1931 Ark. Acts 705; 1927 Cal. Stat. 938; 37 Del. Laws 813 (1931); 1931 Ill. Laws 452; 1927 Ind. Acts 469; 1927 Iowa Acts 201; 1933 Kan. Sess. Laws 76; 1932 La. Acts 337; 1927 Mich. Pub. Acts 888; 1933 Minn. Laws 231; 1929 Mo. Laws 170; 1929 Neb. Laws 674; 1931 N.Y. Laws 2389; 1931 N.D. Laws 305-06; 1929 Pa. Laws 777; 1927 R.I. Acts & Resolves 256; 1934 S.C. Acts 1288-89; 1933 Tex. Gen. Laws 219; 1933 Wash. Sess. Laws 335; 1929 Wis. Sess. Laws 157; *see also* ROA.251-77 (compiling relevant state statutes).

States also have long restricted other weapons deemed dangerous and uncommon.[4] These "longstanding, presumptively lawful regulatory measures," confirm that dangerous weapons such as machine guns are "not protected from regulation by the Second Amendment." *NRA v. ATF*, 700 F.3d 185, 196-97 (5th Cir. 2012).

2. Plaintiff primarily argues that machine guns fall within the scope of the Second Amendment because they are "part of the ordinary military equipment," Pl. Br. 12, asserting that the Supreme Court's decision in *Miller* established "that the Second Amendment right extends to items that are part of the ordinary soldier's equipment." *Id.* at 47-48. On this reasoning, Hollis contends that, while "shoulder-fired rockets, mortars, and heavy machineguns probably do not" fall within the Second Amendment, machine guns such as "M-16's fall within Second Amendment protection" because they are "within the scope of the military equipment issued to the average infantry soldier." *Id.* at 48. He notes that "[s]ince the Founding of

---

[4] *See, e.g.*, 1837 Ga. Laws 90 (prohibiting classes of knives, pistols, and other dangerous weapons); 1837-1838 Tenn. Pub. Acts 200, ch. 137 (banning sale of categories of knives); 1881 Ill. Laws 73 (barring possession or transfer of "any slung-shot or metallic knuckles or other deadly weapon of like character"); 1929 Mich. Pub. Acts 529 (making it "unlawful . . . to manufacture, sell, offer for sale, or possess any machine gun or firearm which can be fired more than sixteen times without reloading"); 1881 Ark. Acts 191 (banning sale or transfer of "any pistol of any kind whatever, except such pistols as are used in the army or navy"); 1879 Tenn. Pub. Acts 135 ("An Act to Prevent the Sale of Pistols"); 1889 N.Y. Laws 167 (prohibiting possession of "a slungshot, billy, sand-club or metal knuckles"); *see also* ROA.278-82 (compiling relevant state statutes).

Jamestown in 1607 the militia firearm has evolved from . . . [m]usket[s]" to machine guns utilizing "[d]rum-type magazine[s] holding up to 100 rounds," and "[b]elt-fed ammunition expending indefinite number of rounds." *Id.*

Plaintiff's argument is foreclosed by *Heller.* *See* 554 U.S. at 624-25. The Court acknowledged that, "[r]ead in isolation, *Miller*'s phrase 'part of ordinary military equipment' could mean that only those weapons useful in warfare are protected." *Id.* at 624. But the Court rejected that reading as "startling," because "it would mean that the National Firearms Act's restrictions on machineguns (not challenged in *Miller*) might be unconstitutional, machineguns being useful in warfare in 1939." *Id.* Observing that, at the time of the founding, individuals reporting for militia service "were expected to appear bearing arms supplied by themselves and of the kind in common use at the time," *id.* (quoting *Miller*, 307 U.S. at 179), the Court "read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns," *id.* at 625.[5]

---

[5] Plaintiff notes that, in its discussion of *Miller*, the Supreme Court in *Heller* suggested that the National Firearms Act's regulation of machine guns is constitutional, but did not explicitly address the constitutionality of the Gun Control Act. *See* Pl. Br. 35-36. But the Gun Control Act had not yet been enacted at the time of *Miller* and therefore was not at issue in that case. The Court explained that an interpretation of the Second Amendment that might cast doubt on the constitutionality of the National Firearms Act would be "startling," because it understood machine guns not to be subject to Second Amendment protection. The same reasoning applies to the regulation of machine guns under the Gun Control Act.

The Court in *Heller* also explained that plaintiff's proposed interpretation of the Second Amendment is not supported by the Amendment's prefatory clause: "A well regulated Militia, being necessary to the security of a free State. . . ." The Court noted that "the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty." 554 U.S. at 627. Militia service therefore did not entail private possession of dangerous and unusual weapons designed solely for military use. In any event, the Court explained that "a prefatory clause does not limit or expand the scope of the operative clause." *Id.* at 578. And, while the prefatory clause suggests one purpose underlying the Second Amendment, it "does not suggest that preserving the militia was the only reason Americans valued the ancient right; most undoubtedly thought it even more important for self-defense and hunting." *Id.* at 599. Thus, while the Court noted a possible objection "that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause," it concluded that "the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right." *Id.* at 627-28.

Plaintiff similarly misreads *Heller* when he argues that the exception from

Second Amendment protection for dangerous and unusual weapons "does not pertain to the mere *possession* of a firearm (or other weapons), but only applies to the *manner* in which that right is exercised."  Pl. Br. 20.  The "important limitation on the right to keep and carry arms" identified in *Heller* does not pertain to conduct, but rather to "the sorts of weapons protected."  554 U.S. at 626; *see id.* at 622 (discussing its holding in *Miller* that "the *type of weapon at issue* was not eligible for Second Amendment protection").

Plaintiff likewise errs in reading *Heller* (Pl. Br. 26-28) to cast doubt on the constitutionality of a categorical prohibition on a type of weapon.  In holding that "a complete prohibition of [handguns] is invalid," the Court in *Heller* emphasized that "handguns are the most popular weapon chosen by Americans for self-defense in the home."  554 U.S. at 629; *see id.* (explaining that "[f]ew laws in the history of our Nation have come close to the severe restriction of the District's handgun ban").  In rejecting a categorical ban on one type of firearm, *Heller* was careful to make clear that other types of firearms did not enjoy similar protection.  And in *Marzzarella*, quoted extensively in plaintiff's brief (Pl. Br. 27-28), the Third Circuit rejected a claim that possession of an unmarked firearm at home was protected by the Second Amendment because it would have meant that "[p]ossession of machine guns or short-barreled shotguns . . . would . . . fall within the Second Amendment," and "the

Supreme Court has made clear the Second Amendment does not protect those types of weapons." 614 F.3d at 94.

Plaintiff emphasizes *Heller's* discussion of sources discussing the common law crime of "affray," which he claims "always required that the arms be used or carried in such manner as to terrorize the population, rather than in the manner suitable for ordinary self-defense." *See* Pl. Br. 22-26; *see also, e.g., State v. Langford*, 10 N.C. 381, 383-84 (1824) (observing that it "is said always to have been an offence at common law" "when a man arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people"). The Court did not thereby suggest that "dangerous and unusual weapons" are protected by the Second Amendment as long as they are not used to terrorize the population. Indeed, weapons such as machine guns and grenades, although commonly employed by the military, may by their nature inspire terror in civilian life. In any event, the historical basis for excluding weapons such as machine guns from the scope of the Second Amendment extends well beyond laws dealing with the crime of "affray," *see supra* nn.2, 3, and this Court relied on similar laws in upholding as presumptively lawful the restriction on the purchase of firearms by minors, *see NRA*, 700 F.3d at 202-03 (observing that "[b]y 1923 . . . twenty-two States and the District of Columbia had made 21 the minimum age for the purchase or use of particular firearms); *see also id.* at

196-97 (explaining that "*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue").

### C. Federal Law Permissibly Regulates the Private Possession of Machine Guns.

1. Even assuming that the Second Amendment applied to the possession of a machine gun, the challenged restrictions would survive means-end scrutiny.  In *NRA*, 700 F.3d at 194-95, this Court adopted a two-step test for evaluating the constitutionality of a firearm restriction.  The Court first considers whether application of the statute to a plaintiff implicates Second Amendment rights.  *Id.*  "If the challenged law burdens conduct that falls outside the Second Amendment's scope, then the law passes constitutional muster."  *Id.* at 195.  If the challenged law burdens conduct within the Second Amendment's scope, the Court next considers whether the statute nonetheless is permissible because it withstands constitutional scrutiny.  *Id.*

Under the second step of the Second Amendment analysis, the regulation of machine guns is properly evaluated under intermediate scrutiny.  Like other courts of appeals, this Court has applied intermediate scrutiny to laws that do not burden "the core of the Second Amendment—for example, the right of a law-abiding, responsible adult to possess and use a handgun to defend his or her home and family."  *NRA*, 700 F.3d at 195; *see, e.g.*, *Marzzarella*, 614 F.3d at 92 ("At its core, the Second Amendment protects the right of law-abiding citizens to possess non-dangerous

weapons for self-defense in the home.").  Federal regulation of machine guns leaves available other firearms, including handguns, better suited for self-defense, and therefore does not implicate "the Second Amendment's central right . . . to defend oneself in one's home," *NRA*, 700 F.3d at 194; *see, e.g., New York State Rifle and Pistol Assoc.*, 804 F.3d at 260 (applying intermediate scrutiny to assault weapon ban because "the prohibition of semi-automatic rifles and large-capacity magazines does not effectively disarm individuals or substantially affect their ability to defend themselves").  Moreover, the regulation of machine guns and other dangerous weapons are "longstanding measure[s] that harmonize[] with the history and tradition of arms regulation in this country" and therefore does "not threaten the core of the Second Amendment guarantee." *Id.* at 196.

Plaintiff's suggestion that the regulation of machine guns should be subject to strict scrutiny (Pl. Br. 32) is directly at odds with *Heller,* which declared that longstanding prohibitions of the sort at issue here are "presumptively lawful[.]"  554 U.S. at 627 n.26; *see NRA*, 700 F.3d at 206 (observing that "to the extent that these laws resemble presumptively lawful regulatory measures, they must not trigger strict scrutiny"); *Marzzarella*, 614 F.3d at 97 (applying intermediate scrutiny to evaluate prohibition of movement of firearms with an obliterated or altered serial number); *Kachalsky v. County of Westchester*, 701 F.3d 81, 93-97 (2d Cir. 2012) (applying

intermediate scrutiny to evaluate requirement that individuals obtain a permit to carry a handgun outside of home); *Woollard v. Gallagher*, 712 F.3d 865, 876-78 (4th Cir. 2013) (same); *Drake v. Filko*, 724 F.3d 426, 435-46 (3d Cir. 2013) (same); *United States v. Mahin*, 668 F.3d 119, 123 (4th Cir. 2012) (collecting cases applying intermediate scrutiny to section 922(g) of the Gun Control Act); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) (applying intermediate scrutiny to section 922(g)(1)); *Schrader v. Holder*, 704 F.3d 980, 989 (D.C. Cir. 2013) (same); *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (applying intermediate scrutiny to section 922(g)(9)).[6]

Under intermediate scrutiny, the regulation of machine guns must be upheld as constitutional if "there is a reasonable fit between the law and an important government objective; that is, the government must show that the law is reasonably adapted to an important government interest." *NRA*, 700 F.3d at 207; *see, e.g.*, *Marzzarella*, 614 F.3d at 98 (requiring that "the asserted governmental end [is] more than just legitimate" and is "either 'significant,' 'substantial,' or 'important,'" and "the fit between the challenged regulation and the asserted objective" is "reasonable, not perfect"); *Chovan*, 735 F.3d at 1139 (requiring "the government's stated objective to be

---

[6] Plaintiff notes that a Sixth Circuit panel applied strict scrutiny in evaluating an as-applied challenge to 18 U.S.C. § 922(g)(4). *See* Pl. Br. 32-33. The Sixth Circuit granted the government's petition for rehearing en banc and that opinion has been vacated. *See Tyler v. Hillsdale Cty. Sheriff's Dep't*, 775 F.3d 308, 322-29 (6th Cir. 2014), *pet. for reh'g en banc granted*, No. 13-1876 (Apr. 21, 2015).

significant, substantial, or important," and "a reasonable fit between the challenged regulation and the asserted objective").

2. Federal regulation of machine guns satisfies intermediate scrutiny because it serves Congress's important interest in addressing the "substantial risk that possession of this inherently dangerous weapon would produce violence or property damage." *Jennings*, 195 F.3d at 798-99. [7]

Congress reasonably concluded that "machine guns . . . are primarily weapons of war and have no appropriate sporting use or use for personal protection." *Jennings*, 195 F.3d at 799 n.4 (quoting S. Rep. No. 90-1501, at 28 (1968)). "[I]n response to gangster-style violence," Congress determined that "there is no reason why anyone except a law officer should have a machine gun or a sawed-off shotgun." *United States v. Serna*, 309 F.3d 859, 863 (5th Cir. 2002); *see* H.R. Rep. No. 83-1337, at 4542 (1954) (Congress enacted the National Firearms Act to target "lethal weapons . . . [that] could be used readily and efficiently by criminals or gangsters"); H.R. Rep. No. 99-495, at 7 (1986) (Congress added section 922(o) to the Gun Control Act due to recognition of "the need for more effective protection of law enforcement officers from the proliferation of machine guns"); *id.* at 4 (describing machine guns as "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime").

---

[7] For the same reasons, federal regulation of machine guns would also satisfy strict scrutiny, were such scrutiny appropriate.

The Supreme Court has recognized "[t]he immense danger posed by machineguns," and "the moral depravity in choosing the weapon" for a crime. *United States v. O'Brien*, 560 U.S. 218, 230 (2010). This Court has similarly described machine guns as "inherently dangerous," *Golding*, 332 F.3d at 840, and "very different weapons from guns without capability of automatic fire," *Kirk*, 105 F.3d at 1003 (Higginbotham, J., concurring); *see also id.* at 1001-02 ("Machine guns possess a firepower that outstrips any other kind of gun."). "The destructive capacity of machine guns puts them in the same category as explosives, which the federal government has heavily regulated for over twenty-five years." *Id.* at 1001 (Higginbotham, J., concurring).

While handguns provide identifiable advantages for self-defense, *see Heller*, 554 U.S. at 710 (Stevens, J., dissenting), "[m]achine guns are no more useful for self-defense than are nonautomatic guns in all but a tiny fraction of civilian uses," Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense*, 56 UCLA L. Rev. 1443, 1487 (2009). And "[t]he firepower of a machine gun puts it in a quite different category from the handguns, shotguns, and rifles so popular with sportsmen." *Kirk*, 105 F.3d at 1002 (Higginbotham, J., concurring).

Although they are not well suited for any private lawful purpose, machine guns are "peculiarly adaptable to use by criminals in the pursuit of their criminal activities."

*Rinzler v. Carson*, 262 So. 2d 661, 666 (Fla. 1972). Indeed, "a machine gun's destructive capacity makes it highly useful for protecting commerce in contraband such as narcotics." *Kirk*, 105 F.3d at 1004 (Higginbotham, J., concurring). And a machine gun undoubtedly would have devastating effect if used in a mass shooting. *Cf. Friedman*, 784 F.3d at 411 (observing that "[a] ban on assault weapons and large-capacity magazines . . . may reduce the carnage if a mass shooting occurs").

That "the majority of homicide and firearms crime" is "committed with handguns," Pl. Br.. 44, is hardly surprising, given the strict regulation of machine gun possession. *Compare* ROA.493 (in 1995, there were approximately "223 million guns available to the general public") *with* ROA.443-44 (in 1984, there were approximately 100,000 registered machine guns, only around 43,000 of which were owned by individuals). Plaintiff does not dispute that a machine gun would be significantly more dangerous than a handgun if used in a crime, or that more criminals would choose to use machine guns were they readily available. That the longstanding regulation of machine guns has succeeded in limiting their use for criminal purposes does not cast doubt on the utility of those laws. Congress need not allow greater access to machine guns in order to further establish that they are dangerous. *See Turner Broad. Sys. v. FCC*, 520 U.S. 180, 195 (1997) ("In reviewing the constitutionality of a statute, courts must accord substantial deference to the predictive judgments of

Congress." (quotation marks omitted)).

## II. Plaintiff's Remaining Claims Are Waived and, in Any Event, Lack Merit.

1. Plaintiff's brief on appeal addresses only his Second Amendment claim, and he has therefore waived any challenge to the district court's disposition of his other causes of action. Plaintiff mentions his equal protection and due process claims in his statement of issues and summary of argument (Pl. Br. 1, 11), but ignores those claims entirely in the body of his brief. Plaintiff does not include his statutory argument in his statement of issues and, while he briefly touches upon the Gun Control Act's definition of "person" in his summary of argument (Pl. Br. 11) and argument (Pl. Br. 34-35), he nowhere develops the point. Plaintiff does not address his Commerce Clause claim in either his statement of issues or his summary of argument, and his discussion of the National Firearms Act legislative history (Pl. Br. 29) does not constitute a substantive argument.

In similar circumstances, this Court has deemed such claims waived because the appellant "failed to present substantive argumentation on point." *United States v. Cervantes*, 706 F.3d 603, 609 n.1 (5th Cir. 2013) (deeming an argument waived where the appellant "briefly mention[ed]" it "in his summary of argument section," but "[t]hat specific contention [did] not appear anywhere else in his brief"); *Herrod v. Potter*, 255 F. App'x 894, 895 n.4 (5th Cir. 2007) (unpublished) (deeming claim waived where

the appellant included it in his summary of argument but did "not argue the point in the body of his brief").  The same reasoning applies here, and plaintiff cannot save these claims by raising them for the first time in his reply brief.  *See, e.g.*, *Warren v. Chesapeake Exploration, LLC*, 759 F.3d 413, 420 (5th Cir. 2014) ("Arguments raised by appellants for the first time in reply briefs are waived.").

2.  Even if they were properly before the Court, plaintiffs remaining causes of action would fail on their merits.

The district court correctly held that plaintiff lacks standing to assert his Commerce Clause claim for the same reasons that he lacks standing to assert his Second Amendment claim—Texas law independently bars his possession of a machine gun.  *See supra* Part I.A.  Indeed, the district court noted that plaintiff's lack of standing is even clearer with respect to his Commerce Clause claim.  "While the prospect of Hollis prevailing on his Second Amendment claim raises the possibility, but not a substantial likelihood, that the Texas ban might also be invalidated, Hollis offers no argument whatsoever that a ruling invalidating the [National Firearms Act] under the Commerce Clause would affect the validity of the Texas ban."  ROA.808.

In the alternative, the district court concluded that plaintiff failed to state a claim that federal regulation of machine guns exceeds Congress's Commerce Clause authority.  This Court has already upheld Congress's authority to regulate machine

guns through the National Firearms Act and section 922(o) of the Gun Control Act, *Kirk*, 105 F.3d at 998; *United States v. Knutson*, 113 F.3d 27, 30-31 (5th Cir. 1997) (per curiam), and "[e]very other circuit that has reached the issue has [likewise] held that § 922(o) is constitutional under the Commerce Clause," *see Henry*, 688 F.3d at 641 & n.4 (collecting cases). The Supreme Court's most recent decisions only further confirm that Congress's Commerce Clause extends to the sort of regulation at issue here. S*ee Henry*, 688 F.3d at 641 n.5 (explaining that *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012) is inapposite because it "involved a requirement that individuals take action," whereas "Section 922(o) involves a *prohibition* of conduct").

Plaintiff's equal protection claim fails for substantially the same reasons as his Second Amendment claim. Plaintiff does not fall within a suspect class, and he has not identified any fundamental right to possess a machine gun. *See supra* Part I.B. Moreover, Congress's regulation of machine guns satisfies any applicable level of means-end scrutiny. *See supra* Part I.C. Congress had a rational basis for "differentiating between machine gun possession by law enforcement and possession by civilians." ROA.825. And Congress permissibly included a grandfathering provision in section 922(o), because "Congress may work incrementally in protecting public safety." *Olympic Arms v. Buckles*, 301 F.3d 384, 390 (6th Cir. 2002) (rejecting

argument that import ban of semi-automatic weapons was unreasonable because it did not reach all similar weapons).

Plaintiff's due process claim fails because he cannot demonstrate that the "state has deprived [him] of a liberty or property interest." *Wilson v. Birnberg*, 667 F.3d 591, 601 (5th Cir. 2012). Plaintiff has no property interest in unlawfully manufacturing or possessing a machine gun in violation of section 922(o) of the Gun Control Act. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (in order to have a property interest, an individual "must . . . have a legitimate claim of entitlement"). Likewise, plaintiff did not have a property interest in ATF's erroneous approval of his application to manufacture a machine gun, when the National Firearms Act expressly directs that "[a]pplications shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law." 26 U.S.C. § 5822. In any event, ATF was well within its authority in revoking plaintiff's application, and "it is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decision." *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002); *see also United Gas Improvement Co. v. Callery Props.*, 382 U.S. 223, 229 (1965) (noting that an "agency, like a court, can undo what is wrongfully done by virtue of its order").

Finally, the district court correctly rejected plaintiff's implausible interpretation

of the Gun Control Act.  ROA.825-27.  As ATF explained, "[t]he fact that an unincorporated trust is not included in the definition of 'person' under the [Gun Control Act] does not mean that an individual may avoid liability under section 922(o) by placing a machinegun 'in trust.'"  ROA.34-35.  Rather, because "a trust is not an entity recognized as a 'person' under the applicable law, it cannot make or hold property and is disregarded."  ROA.35.  Instead, ATF properly "consider[s] the individual acting on behalf of the trust to be the proposed maker/possessor of the machinegun."  *Id*.[8]  Plaintiff's contrary interpretation of the Gun Control Act would render the Act meaningless by allowing anyone to avoid its prohibitions by establishing an unincorporated trust.  Under his interpretation, even a convicted felon could possess a firearm through an unincorporated trust, despite the prohibition in 18 U.S.C. § 922(g)(1).  That interpretation is contrary to logic and the plain meaning of the statute.

## III.  Plaintiff Has Not Identified Any Procedural Error by the District Court.

Plaintiff claims that the district court's opinion should be reversed because the court should have allowed him discovery before ruling on the government's motion to dismiss, Pl. Br. 50-52, and because the court should have allowed plaintiff leave to

---

[8] The district court further explained that ATF's approach accords with Texas state law, under which "the 'term' trust refers not to a separate legal entity but rather to the *fiduciary relationship* governing the trustee with respect to the trust property."  ROA.826 (quoting *In re Guetersloh*, 326 S.W.3d 737, 739 (Tex. App. 2010).  "[A]s the trustee of the Hollis Trust, only Hollis could 'transfer or possess a machinegun,' as is prohibited under § 922(o)."  ROA.827.

amend his complaint to add Texas as a party, Pl. Br. 52-55. Both arguments are mistaken.

Plaintiff cannot identify any abuse of discretion by the district court in denying his motion for additional discovery pursuant to Federal Rule of Civil Procedure 56(d). *See Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (reviewing denial of such a motion for abuse of discretion). Rule 56(d) allows for additional discovery necessary to oppose a motion for summary judgment. Because the district court ruled on the government's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), it had no cause to allow discovery. *See* ROA.824 ("Plaintiff's assertion falls outside of this Court's purview in deciding a 12(b)(6) motion.").

In any event, plaintiff fails to explain why any additional discovery would have produced relevant evidence. *See Raby*, 600 F.3d at 561 (a request to stay summary judgment for additional discovery "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion"). It is not even clear what cause of action plaintiff believes would be supported by evidence that ATF has approved other applications to manufacture a machine gun.

Plaintiff also cannot identify any abuse of discretion by the district court in

denying him leave to amend his complaint and dismissing the case with prejudice. *See In re FEMA Trailer Formaldahyde Prods. Liab. Litig.*, 628 F.3d 157, 161 (5th Cir. 2010) (a district court's decision to dismiss with prejudice is reviewed for abuse of discretion). The district court observed that, while "Plaintiff stated at the hearing that he would amend his pleadings," at the time of the court's decision months later, "Plaintiff ha[d] not sought leave to amend."  ROA.800.  In any event, any amendment of plaintiff's complaint to address standing would have been futile because, as the district court correctly concluded, plaintiff's Second Amendment and Commerce Clause claims both fail on the merits.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BENJAMIN C. MIZER
  *Principal Deputy Assistant*
  *Attorney General*

JOHN R. PARKER
  *United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
PATRICK G. NEMEROFF
  *(202) 305-8727*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*

DECEMBER 2015

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), this brief uses proportionately spaced font and contains 8,311 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii);

2. Pursuant to Fifth Circuit Rule 25.2.13, I have complied with this Court's privacy redaction requirements; and

3. Pursuant to Fifth Circuit Rule 25.2.1, the electronic version of this brief has been scanned for viruses using Microsoft Forefront Endpoint Protection, last updated on December 10, 2015, and is free of viruses.


/s/ Patrick G. Nemeroff
PATRICK G. NEMEROFF

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing Brief for Appellee with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the Appellate CM/ECF system on December 15, 2015. Participants in the case are registered CM/ECF users and service will be accomplished through that system.

/s/ Patrick G. Nemeroff
PATRICK G. NEMEROFF

# ADDENDUM

# TABLE OF CONTENTS

**Page**

18 U.S.C. § 922(o)............................................................................. A-1

26 U.S.C. § 5822............................................................................... A-2

26 U.S.C. § 5841............................................................................... A-3

26 U.S.C. § 5845............................................................................... A-4

Texas Penal Code § 46.05(a)(1) ....................................................... A-5

## 18 U.S.C. § 922: Unlawful acts

* * * *

(o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to--

    (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

    (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

* * * *

## 26 U.S.C. § 5822: Making

No person shall make a firearm unless he has (a) filed with the Secretary a written application, in duplicate, to make and register the firearm on the form prescribed by the Secretary; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made in the application form in such manner as the Secretary may by regulations prescribe; (d) identified himself in the application form in such manner as the Secretary may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the Secretary to make and register the firearm and the application form shows such approval. Applications shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law.

# 26 U.S.C. § 5841: Registration of firearms

(a) Central registry.--The Secretary shall maintain a central registry of all firearms in the United States which are not in the possession or under the control of the United States. This registry shall be known as the National Firearms Registration and Transfer Record. The registry shall include--

(1) identification of the firearm;

(2) date of registration; and

(3) identification and address of person entitled to possession of the firearm.

(b) By whom registered.--Each manufacturer, importer, and maker shall register each firearm he manufactures, imports, or makes. Each firearm transferred shall be registered to the transferee by the transferor.

(c) How registered.--Each manufacturer shall notify the Secretary of the manufacture of a firearm in such manner as may by regulations be prescribed and such notification shall effect the registration of the firearm required by this section. Each importer, maker, and transferor of a firearm shall, prior to importing, making, or transferring a firearm, obtain authorization in such manner as required by this chapter or regulations issued thereunder to import, make, or transfer the firearm, and such authorization shall effect the registration of the firearm required by this section.

(d) Firearms registered on effective date of this Act.--A person shown as possessing a firearm by the records maintained by the Secretary pursuant to the National Firearms Act in force on the day immediately prior to the effective date of the National Firearms Act of 1968 shall be considered to have registered under this section the firearms in his possession which are disclosed by that record as being in his possession.

(e) Proof of registration.--A person possessing a firearm registered as required by this section shall retain proof of registration which shall be made available to the Secretary upon request.

# 26 U.S.C. § 5845: Definitions

For the purpose of this chapter--

(a) Firearm.--The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of Title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

(b) Machinegun.--The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

* * * *

# Texas Penal Code § 46.05: Prohibited Weapons

(a) A person commits an offense if the person intentionally or knowingly possesses, manufactures, transports, repairs, or sells:

> (1) any of the following items, unless the item is registered in the National Firearms Registration and Transfer Record maintained by the Bureau of Alcohol, Tobacco, Firearms and Explosives or classified as a curio or relic by the United States Department of Justice:
>
> > (A) an explosive weapon;
> >
> > (B)  a machine gun;
> >
> > (C)  a short-barrel firearm; or
> >
> > (D)  a firearm silencer;

* * * *