No. 15-10803

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————

JAY AUBREY ISAAC HOLLIS, Individually and as Trustee of the Jay
Aubrey Isaac Hollis Revocable Living Trust,

*Plaintiff - Appellant*,

v.

LORETTA E. LYNCH, Attorney General of the United States; Thomas
E. BRANDON, Acting Director of the Bureau of Alcohol, Tobacco,
Firearms and Explosives,

*Defendants – Appellees.*

———————

*On appeal from the United States District Court for the Northern District
of Texas, Dallas Division, USDC No. 3:14-CV-3872
The Honorable Judge Barbara M.G. Lynn*

———————

## APPELLANT'S REPLY BRIEF
———————

ALAN ALEXANDER BECK
LAW OFFICE OF ALAN BECK
4780 Governor Drive
San Diego, CA  92122
(619) 905-9105

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440

# TABLE OF CONTENTS

**Pages(s)**

TABLE OF AUTHORITIES…………………………………………....…………..ii

ARGUMENT……………………………………………………………………..…...1

I.      STANDING

      A. Mr. Hollis Has Standing To Bring His Second Amendment Claim…..…1

II.     AMENDMENT OF THE COMPLAINT WOULD NOT BE FUTILE….…2

III.    DISCOVERY IS NOT FUTILE AND WOULD PROVE HOLLIS' EQUAL PROTECTION CLAIM………………………………………………..….…2

IV.    THE SECOND AMENDMENT APPLIES, PRIMA FACIE, TO HOLLIS' MACHINEGUN………………………………………………………..….4

CONCLUSION………………………………………………………...………..13

CERTIFICATE OF SERVICE…………………………………………....………….14

CERTIFICATE OF COMPLIANCE……………………………………….….…15

# TABLE OF AUTHORITIES

***Cases***

*Bustos v. Martini Club* Inc., 599 F.3d 458 (5th Cir.2010) ........................................................ 3

*District of Columbia v. Heller, 554 U.S. 570 (2008)* ............................................................ *passim*

*Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) ........................................................................ 1

*Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013) cert. denied sub nom. *Priester v. JPMorgan Chase Bank, N.A.*, 134 S. Ct. 196 (2013) ................................ 3

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), as amended (Jan. 27, 2003) ................ 3

*State v. Herrmann*, 2015AP53-CR, 2015 WL 7432597 (Wis. App. Nov. 24, 2015) ....... 4,5

*State v. Kessler,* 289 Ore. 359, 368, 614 P.2d 94, 98 (1980) .................................................. 6

*U.S. v. Cervantes*, 706 F.3d 603 (5th Cir. 2013) .................................................................. 12

*U.S. v. Kirk*, 105 F.3d 997 (5th Cir. 1997) ............................................................................ 9

*United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), cert. denied, 536 U.S. 907 (2002) ............................................................................................................................................. 13

*United States v. Miller, 307 U.S. 174 (1939).* ..................................................................... 5, 6

*Util. Air Reg. Group v. E.P.A.*, 134 S. Ct. 2427 (2014) ...................................................... 11

***Statutes***

18 U.S.C. § 921 ........................................................................................................................ 10

18 U.S.C. § 922(g)(1) .............................................................................................................. 11

18 U.S.C. § 922(o) .............................................................................................................. 11, 12

***Other Authorities***

132 Cong. Rec. 9,602 (1986) ................................................................................................... 7

*Armor Piercing Ammunition and the Criminal Misuse of and Availability of Machineguns and Silencers: Hearings on H.R. 641 and Related bills Before the Committee on the Judiciary, 98th Congress, 1st Sess. 132* (1984). ............................................................................................. 8

S. Rep. No. 90-1097, at 28 (1968). ................................................................................... 11

**Rules**

Rule 12(b)(6) ............................................................................................................................. 3

Rule 56(d) ......................................................................................................................... 10, 13

I. **STANDING**

A. <u>Mr. Hollis Has Standing To Bring His Second Amendment Claim</u>

Appellees claim that "regardless of the outcome of this suit, therefore, [Hollis'] asserted injury would not be redressed." App. Br. p. 12. This is false. Texas does not independently ban machineguns, and but for the federal machinegun ban, Hollis would be allowed to possess machineguns registered with the BATFE. As demonstrated in Hollis' Opening Brief, Hollis has standing to bring his challenges to the offending statutes. However, if this Court were to state that machineguns were protected by the Second Amendment, it is clear that any prohibition on manufacture or possession by Texas law fails, no matter if they are a party or not. *See Obergefell v. Hodges*, 135 S. Ct. 2584, 2606 (2015) (finding a right to same-sex marriage and that states must recognize lawful marriages performed in other states). *Obergefell* is fatal to the government's contention that Texas must be a party or that a pronouncement from this Court that the Second Amendment protects machineguns would not have an effect on state law. This is simply incorrect. But as stated in Hollis' Opening Brief, Hollis attempted to negate this issue by requesting at least two times to amend.

However, as briefed more fully in the Opening Brief, even if this Court finds that Hollis does not have standing to pursue his claim against the NFA, it still should find that Hollis has standing to pursue the remainder of his claims against the GCA's complete ban on post-1986 machineguns.

## II. AMENDMENT OF THE COMPLAINT WOULD NOT BE FUTILE

Appellees then turn to the amendment request by Hollis and state that it would be futile to allow Hollis to amend his Complaint. App. Br. 35. This is false. Amendment of the Complaint would have satisfied all standing issues the District Court with which it took issue. For instance, if Texas would have been added as a party, and Texas law brought into the picture, the government's argument on redressability would be moot. Alternatively, if Hollis were allowed to amend and voluntarily dismiss his challenge to the National Firearms Act, then Texas' safe harbor would still exist and a favorable ruling from the District Court would redress his injury. Amendment is not futile, and Appellees' stating that it would does not make it so. Hollis respectfully requests that at a minimum, the case be remanded to the District Court with instructions to allow Hollis to amend his Complaint.

## III. DISCOVERY IS NOT FUTILE AND WOULD PROVE HOLLIS' EQUAL PROTECTION CLAIM

Discovery is also not futile in this case as it would prove Hollis' contention that the BATFE has allowed post-May 19, 1986 machineguns to be transferred to non-governmental entities. Hollis complied with the required affidavit setting forth a plausible basis for believing that the BATFE has approved and allowed post-May 19, 1986 machineguns to non-governmental entities, and also attached a letter, from the BATFE to Hollis' response to the government's Motion to Dismiss. ROA.433. Hollis

could prove through discovery, if allowed, that the BATFE is violating his Equal Protection right, however, the lower court did not allow this discovery, and without it, Hollis is unable to prove what the BATFE denies has ever happened. Namely, whether any post-May 19, 1986 machineguns have been transferred to non-governmental entities.

In *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), as amended (Jan. 27, 2003), the Ninth Circuit struck down an exemption to California's assault weapons ban that applied to retired law enforcement officers. Similarly, discovery here would allow Hollis to prove that the BATFE has allowed others (perhaps even ex-BATFE agents) to possess post-May 19, 1986 machineguns. At the very least, this disparate treatment of Hollis would require a rational basis review. If this Court finds that possession of a machinegun implicates the Second Amendment, which *District of Columbia v. Heller, 554 U.S. 570 (2008)* seems to indicate, then it would require a higher means-end scrutiny application. Regardless of the level of scrutiny applied, under *Silveira,* the disparate treatment of private citizens would fail Equal Protection review.

On this Rule 12 dismissal[1], Hollis proffers to this Court (and the lower court) that the BATFE has allowed private citizens to possess post-May 19, 1986 machineguns and

---

[1] This Court reviews "a dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*, 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.'" *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 672 (5th Cir. 2013) cert. denied sub nom. *Priester v. JPMorgan Chase Bank, N.A.*, 134 S. Ct. 196 (2013) (quoting *Bustos v. Martini Club* Inc., 599 F.3d 458, 461 (5th Cir.2010)).

that he has actual knowledge of at least three Form 1 approvals of post-May 19, 1986 machineguns, and a reasonable belief of others. ROA.367. But without discovery, these facts cannot be proven. See also Opening Brief, pp. 50, 51. The lower court largely ignored the factual information provided in Hollis' Response to the Appellees' Motion to Dismiss because it was not attached to the Complaint. Accordingly, if amendment was granted, this information would be attached to the Complaint and thus, would be considered by the court. Likewise, demanding that a plaintiff such as Hollis to come to court with every scrap of imaginable information and requiring it be attached to his complaint would obviate any need for discovery in any case.

IV. **THE SECOND AMENDMENT APPLIES, PRIMA FACIE, TO HOLLIS' MACHINEGUN**

Appellees advise that states "have long restricted other weapons deemed dangerous and uncommon." Appellee Br. p.18. See also Fn. 4. While this Court is not bound by a Wisconsin Court of Appeals case, the following is instructive. In *State v. Herrmann*, 2015AP53-CR, 2015 WL 7432597 (Wis. App. Nov. 24, 2015), Herrmann was convicted of keeping an automatic knife (a switchblade) in his home for self-defense. Wisconsin bans possession of automatic knives. Wisconsin argued the same as the state always argues: protecting the public. Yet in *Herrmann*, just as the Appellees here, the state cited:

> no evidence to establish that [attacks with switchblades] actually exists to any significant degree. Again, the State has the burden to establish that § 941.24(1) satisfies intermediate scrutiny, and it must do so by showing the existence of real, not merely conjectural, harm. See *Turner Broad. Sys.*, 512 U.S. at 664.

4

*State v. Herrmann*, 2015AP53-CR, 2015 WL 7432597, ¶12. Sharing the same rationale as the tradition of prohibiting carrying dangerous and unusual weapons, the court further stated:

> Moreover, as applied to Herrmann, Wis. Stat. § 941.24(1) is not substantially related to the State's cited objective of protecting the public from surprise attacks. It is undisputed that Herrmann possessed his switchblade in his own home for his protection. The threat to the public of a surprise attack by a person possessing a switchblade in his or her own residence for the purpose of self-defense is negligible. Consequently, while banning possession of switch-blades in other settings might be substantially related to the State's cited objective of protecting the public from surprise attacks, prohibiting individuals from possessing switchblades in their own homes for their own protection is not.

*Id.* at ¶13. Further, in Fn. 9 of the opinion, the *Herrmann* court stated:

> Although the *Heller* Court emphasized that handguns are frequently used for self-defense, we do not think *Heller* can be read to create different levels of protection for different types of arms that fall under the Second Amendment, based on their popularity. In addition, it is not particularly surprising that handguns are more prevalent than switchblades, given that switchblades were banned or severely restricted in many states, including Wisconsin, beginning in the late 1950s and early 1960s.

*Id.* at Fn. 9. This is directly analogous to Hollis and his M-16. While the government may have an interest in prohibiting the carry of an M-16, certainly Hollis cannot be prohibited from mere possession in his own home for his own protection of a firearm that he registered (and was approved by the BATFE) pursuant to the NFA and further, the "popularity" of said arm cannot provide the basis for the protection.

Appellees cling to the *Heller* court's "startling" language regarding *Miller's* interpretation of short-barreled shotguns. App. Br. p. 19. And then in footnote 5,

Appellees confuse what the Supreme Court stated in *Heller's* interpretation of *United States v. Miller, 307 U.S. 174 (1939).* That the Gun Control Act (and the machinegun ban) was not at issue in the 1939 *Miller* case does not change that the Supreme Court in *Heller* stated set forth here for full context

> We may as well consider at this point (for we will have to consider eventually) *what* types of weapons *Miller* permits. Read in isolation, *Miller'*s phrase "part of ordinary military equipment" could mean that only those weapons useful in warfare are protected. That would be a startling reading of the opinion, since it would mean that the National Firearms Act's restrictions on machineguns (not challenged in *Miller*) might be unconstitutional, machineguns being useful in warfare in 1939. We think that *Miller* 's "ordinary military equipment" language must be read in tandem with what comes after: "[O]rdinarily when called for [militia] service [able-bodied] men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." 307 U.S., at 179, 59 S.Ct. 816. The traditional militia was formed from a pool of men bringing arms "in common use at the time" for lawful purposes like self-defense. "In the colonial and revolutionary war era, [small-arms] weapons used by militiamen and weapons used in defense of person and home were one and the same." *State v. Kessler,* 289 Ore. 359, 368, 614 P.2d 94, 98 (1980) (citing G. Neumann, Swords and Blades of the American Revolution 6–15, 252–254 (1973)). Indeed, that is precisely the way in which the Second Amendment's operative clause furthers the purpose announced in its preface. We therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns.

*D.C. v. Heller*, 554 U.S. 570, 624-25 (2008). Clearly, in 2008, the Supreme Court could have commented on the Gun Control Act, yet chose not to. That *Miller* predated the Gun Control Act has no bearing on the Supreme Court's commenting solely on the National Firearms Act and that a reading of *Miller* to protect "only those weapons useful in warfare" would be "startling" does not equate to a pronouncement from the Supreme

6

Court that machineguns are not protected arms. Quite the opposite, *Heller* directly held that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582. M-16s are bearable arms. Appellees concede that the prefatory clause of the Second Amendment "suggests one purpose underlying the Second Amendment," and the Supreme Court was correct when it held that the prefatory clause "does not suggest that preserving the militia was the <u>only</u> reason Americans valued the ancient right…" *Id.* at 599. (underlining added). App. Brief. p. 20. As Amicus aptly pointed out, "The idea is laughable that, if someone showed up at Lexington and Concord with an M-16, his commanders would have turned him away, saying 'Take it home, that's far too effective a weapon to use against the Redcoats.'" Amicus of GOA, pp. 11-12.

Appellees likewise quote to Senator Ted Kennedy, quoted in 132 Cong. Rec. 9,602 (1986) when he stated, "The only thing that has changed about the machinegun situation since the 1968 act … is that machine guns [sic] have become a far more serious law enforcement problem." App. Br. 5. But in 1984 at a hearing before Congress, then-Director Stephen E. Higgins testified about the NFA and <u>lawfully registered machineguns</u> specifically. Director Higgins stated,

> These weapons are held by collectors and others; only rarely do they figure in violent crime. In this connection, the question of why an individual would want to possess a machinegun or, more often, a silencer, is often raised. We would suggest that ATF's interest is not in determining why a law-abiding individual wishes to possess a certain firearm or device, but rather in ensuring that such objects are not criminally misused. <u>The regulatory scheme for dealing in or legally possessing NFA weapons and</u>

7

<u>silencers is straightforward and provides safeguards which are adequate, in normal circumstance, to ensure that the firearms remain in the hands of law abiding individuals.</u>

*Armor Piercing Ammunition and the Criminal Misuse of and Availability of Machineguns and Silencers: Hearings on H.R. 641 and Related bills Before the Committee on the Judiciary, 98th Congress, 1st Sess. 132* (1984). ROA.439-440. (underlining added). Director Higgins testified that "registered machineguns which are involved in crimes are so minimal so as not to be considered a law enforcement problem." *Id.* One of these individuals is not telling the truth. Either machineguns are a scourge upon law enforcement, or lawfully registered machineguns, owned presumptively by law-abiding citizens, are not a law enforcement problem.[2] Director Higgins' testimony makes far more sense as criminals are not going to go through the onerous National Firearms Act registration scheme, pay the tax, wait six to nine months for approval, and then and only then, commit their crimes. Senator Kennedy may have intended his comment narrower in scope, as only applying to non-registered machineguns, but nonetheless, Director Higgins' testimony is dispositive of the law-abiding citizens' possession of machineguns, i.e., that it is NOT a law enforcement problem. But the Supreme Court

---

[2] Senator Kennedy's *ipse dixit* aside, if the Appellees' position mirrors the Senator's, then it can easily be proven with hard data and facts and the Appellees should be required to prove their contention. However, any machineguns lost from failed sting operations, including to the extent any that were involved in Fast and Furious, should be excluded from any dataset.

8

has already rejected the notion that banning arms for the law-abiding is justified to prevent unlawful use by criminals. *Heller* at 636.

Appellees state, "Indeed, 'a machine gun's destructive capacity makes it highly useful for protecting commerce in contraband such as narcotics.'" *U.S. v. Kirk*, 105 F.3d 997, 1004 (5th Cir. 1997) (Higginbotham, J., concurring). App. Br. p. 28. Do cases speaking of criminal misuse of tools apply to Hollis? Should Congress ban cars that exceed seventy miles per hour because the majority of states limit speed on the interstates to seventy miles per hour and that perhaps, some of those cars are also utilized in transporting contraband such as narcotics? Rhetorical questions aside, the burden is on the government to demonstrate law-abiding citizens' misuse of machineguns. They cannot.

In fact, Appellees concede they do <u>NOT</u> address law-abiding ownership of machineguns. <u>THIS</u> case is about Hollis, a law-abiding citizen, who applied for, and received, permission to make a machinegun from the agency tasked with enforcing the firearms laws. <u>THIS</u> case is not about protecting narcotics commerce or any other criminal misuse of a machinegun. But as stated *supra*, Appellees' argument is foreclosed by *Heller*. *Heller* at 636. Appellees' attempt to shift the burden to Hollis to "dispute that a machine gun [sic] would be significantly more dangerous than a handgun if used in a crime, or that more criminals would choose to use machine guns [sic] were they readily available" is not the way this works. App. Br. p. 28. Hollis has no duty to prove

9

the governments' contention. Hollis is not a prohibited person, and the Second Amendment applies, prima facie, to his M-16.

As discussed in Hollis' Brief, the term "person" is defined in the GCA to mean "any individual, corporation, company, association, firm, partnership, society, or joint stock company." See 18 U.S.C. § 921. The term "person" does not include an unincorporated trust. Appellees argue that Hollis' interpretation of the statute "would render the Act meaningless by allowing anyone to avoid its prohibitions by establishing an unincorporated trust." App. Br. 33. Congress writes the laws. If Congress wanted to preclude "unincorporated trusts" from owning machineguns, even post-May 19, 1986 machineguns, they would have included the term "trust" in the definition of "person." Congress did not. This ties in with Hollis' allegations that the BATFE has allowed transfers of post-May 19, 1986 machineguns. However, since the district court denied the Rule 56(d) relief, Hollis is unable to conclusively prove that this has happened, even though Hollis submitted an affidavit in support of his Rule 56(d) relief. ROA.367. This relief ties in to Hollis' Equal Protection claim, and without this discovery, Hollis is precluded from proving what is essential to his Equal Protection claim.

While Hollis does not concede that a felon could own firearms as a Trustee of an unincorporated trust, as Appellees allege,[3] the law banning felons from owning firearms

---

[3] *See* App. Br. p. 33.

did not come into existence until 1968. In 1968, Congress included in both the Omnibus Crime Control Act and the Gun Control Act of 1968, Pub. L. No. 90-618, Title I, § 101, 82 Stat. 1213, statutory provisions limiting firearms access by persons with "criminal background[s]," S. Rep. No. 90-1097, at 28 (1968). These provisions include 18 U.S.C. § 922(g)(1), which provides that "[it] shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." This statute post-dated the National Firearms Act, which was adopted in 1934, thirty-four years before the Gun Control Act's felon dispossession statute. If 18 U.S.C. § 922(o) is poorly written, it is not the job of the agency to rewrite it how it sees fit. The Supreme Court has plainly stated "that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Reg. Group v. E.P.A.*, 134 S. Ct. 2427, 2446 (2014). The government's fear-mongering about felons does nothing for its position on machineguns as this case is not about a felon in possession as Hollis is a law-abiding citizen and not precluded from firearm ownership.

Interestingly, Appellees allege that machineguns "are not well suited for any private lawful purpose" and that "[machineguns] are no more useful for self-defense than are nonautomatic guns in all but a tiny fraction of civilian uses." App. Br. P. 27. It is peculiar because the government stated in a prior request for proposal that, "DHS and its components have a requirement for a 5.56x45mm NATO, <u>select-fire</u> firearm <u>suitable</u>

<u>for personal defense use</u> in close quarters and/or when maximum concealment is required."[4] Select-fire simply means that the firearm can function as either semi-automatic or fully automatic. The Appellees cannot claim machineguns are not valid for personal defense for civilians and then extol their virtues for their own personnel. It is not a logical conclusion.

Appellees state that Hollis "waived" his argument regarding the statutory argument on trusts. App. Br. p. 29. This is simply not true. Hollis mentioned the statutory trust argument on the following pages of his brief: pp. 5, 6, 7, 11, 34, 35. Further, this entire case stemmed from the Appellees' approval of Hollis' Form 1 to make a machinegun and then subsequent unlawful revocation. Appellees' claim of waiver is simply not applicable. Appellees' citation to *U.S. v. Cervantes*, 706 F.3d 603, 609 n.1 (5th Cir. 2013) does not suggest a claim of waiver in this case, as that footnote states, in part, "[h]aving failed to present substantive argumentation on point, it is deemed waived." As Hollis further briefed on page 34 of his Opening Brief, "the plain language [of 18 U.S.C. § 922(o)] excludes 'unincorporated trust' from the definition, this court (and the BATFE) should not read into the statute what is not there." (case citations omitted). Waiver this is not.

---

[4] https://www.fbo.gov/?s=opportunity&mode=form&id=d791b6aa0fd9d3d8833b2efa08300033&tab=core&_cview=0 (underlining added) (last accessed December 27, 2015).

Hollis' Equal Protection argument is subsumed in his Second Amendment argument as the District Court's analysis of Hollis' Second Amendment claim "was required for the court to reach its holding for Hollis' Equal Protection claim." Opening Brief, p. 19. As such, there has been no waiver of Hollis' Equal Protection claim. Additionally, as stated *supra*, Hollis' contention that he be allowed Rule 56(d) discovery was essential to his Equal Protection claim and he was not afforded that relief in the lower court.

## **CONCLUSION**

Hollis asks this Court to uphold the Second Amendment and find that the Second Amendment protects his ownership of an M-16. The Fifth Circuit, in *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), cert. denied, 536 U.S. 907 (2002), announced a position different from all other Courts of Appeal by scrutinizing text, history, and tradition of our nation when it found the Second Amendment conferred an individual right to keep and bear arms. There is no question that Hollis' M-16 is the quintessential military and militia rifle of its time, and thus, is protected under the Second Amendment.

Respectfully Submitted,

/s/ Alan Beck  
Alan Alexander Beck  
Counsel for Appellant

/s/ Stephen D. Stamboulieh  
Stephen Dean Stamboulieh  
Counsel for Appellant

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 28, 2015, I electronically filed the foregoing Reply Brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

      /s/Stephen D. Stamboulieh
      Stephen@sdslaw.us
      Counsel for Appellant

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of Federal Rules of Appellate Procedure, I hereby certify that the foregoing brief was prepared using Microsoft Word 2016 and complies with the type and volume limitations set forth in Rule 32 of the Federal Rules of Appellate Procedure. I further certify that the font used is 14 point Garamond, for text and footnotes at 12 point Garamond, and the computerized word count for the foregoing brief (excluding exempt material) is 3,661.

I further certify to the following 1) all required privacy redactions have been made; 2) the electronic submission is an exact copy of the paper copy; and 3) the document is free from viruses and has been scanned by Kaspersky Internet Security, version 16.0.0.614(d).

/s/Stephen D. Stamboulieh
Stephen@sdslaw.us
Counsel for Appellant